842 P.2d 1300

**STATE of Arizona, Appellee,**

v.

**Stephen Craig YOUNG, Appellant.**

**No. 1 CA–CR 90–1563.**

Court of Appeals of Arizona, Division 1, Department C.

April 28, 1992.

Review Denied Jan. 20, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., Galen

H. Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

Wendy F. White, Flagstaff, for appellant.

## OPINION

GRANT, Presiding Judge.

■ Pursuant to an *Alford*[1] plea, appellant Stephen Craig Young was convicted of one count of theft, a class 3 felony. The defendant was placed on intensive probation for two years with a condition that he serve 45 days in jail. The charge arose out of losses incurred by the Baker Shoes store in Flagstaff between May 1985 and January 1987, while defendant was employed as manager. On appeal, defendant challenges a portion of the trial court's restitution award to the victim for losses incurred between May 1985 and June 1986. We must determine if the award of restitution bears a reasonable relationship to the victim's loss. *State v. Howard*, 168 Ariz. 458, 460, 815 P.2d 5, 7 (App.1991).

At a restitution hearing, an internal auditor for the store owner testified that the Flagstaff store was inventoried in May 1985, at the time defendant was named manager. In June of 1986, an audit revealed a shortage of inventory valued at $4,017. A subsequent audit, in January 1987, revealed a further shortage of inventory valued at $1,719. The witness testified that the company generally experienced shortages of one percent to two percent of sales, and estimated that 98 percent of such shortages were attributable to theft by employees.

The regional manager for the store's owner testified at the hearing that defendant admitted he was "kind of dipping into the till." Defendant explained that he had incurred heavy bar bills and taxi fares of $200 a month that forced him to borrow from the cash register. Three to four weeks after defendant became store manager, he stated that he had already taken $150 from the register. According to the regional manager, the embezzlement had continued, "on an off and on basis," until

defendant was terminated following the January 1987 audit.

■ Defendant contends that the store's calculation of its $4,017 loss between May 1985 and June 1986 is too speculative and that other persons may have been responsible for the inventory shrinkage. With regard to the first argument, the auditor testified that the loss calculation was based on an inventory that showed shortages in four product areas. To each missing unit of inventory, the auditor assigned an average price value, since the inventory did not identify what items were actually missing. There is nothing in the record to indicate that this method of accounting was speculative. *See State v. Howard, supra* (calculation of victim's future medical expenses and lost wages, based on testimony of victim and her lawyer, upheld since defendant failed to establish expenses not grounded on a reasonable basis). We find there was a reasonable basis for the store's calculation of its loss.

■ In support of his second argument, defendant notes that all Edison Brothers stores experienced system-wide losses of one percent to two percent. Edison Brothers is the parent company of Baker Shoes Stores. A regional manager for Edison testified that "normal" losses were one percent of sales. Because all stores incur losses, defendant argues, the court should not have inferred that the total loss of $4,017 at the Flagstaff store was attributable to him. We disagree. There is no way of knowing whether losses to employee theft in all of the stores over a given period of time is attributable to a single employee or several employees. It seems logical to assume that either might be true. Here, there is no evidence that any other employee was stealing from the store, and there was clear evidence that the defendant stole substantial amounts. He took the money in a variety of ways. Sometimes he simply took money from the cash register. On other occasions he sold shoes for cash and did not ring up the transaction. On still others, he sold shoes without ringing

---

1. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

up the transaction until that particular model of shoe was placed on sale and then rang up the transaction as if the shoe had been sold at sale, pocketing the difference between regular price and the sale price. The defendant kept records of some of these thefts; and, although these cannot be completely deciphered, they substantiate that the thefts might well have totalled the amount ordered in restitution. The trial court could have rationally concluded that the defendant caused the entire loss the auditor was able to substantiate. *See Crouch v. State*, 744 P.2d 971 (Okla.Crim.App.1987) (damage to victim, a municipal utility, could be calculated with reasonable certainty in embezzlement prosecution in light of evidence that utility's annual cash receipts declined by more than $40,000 during year that she was secretary/treasurer). Further, the presentence report noted that all of the employees working for appellant at the time these offenses were occurring confirmed appellant's fraudulent behavior through written statements.

[4, 5] Defendant also contends that the court's award of restitution for the period ending in June 1986 improperly included a component of lost profit. This argument is based on the auditor's testimony that his estimate of loss included an unspecified profit above the cost of merchandise to the store. Defendant relies on *State v. Pearce*, 156 Ariz. 287, 751 P.2d 603 (App.1988), in which Division Two of this court held that "lost profits" suffered by the victim due to a breached lease were consequential damages that were not recoverable as restitution for "economic loss" under Ariz.Rev. Stat.Ann. ("A.R.S.") sections 13–603(C) and 13–105(11).

Contrary to defendant's argument, *Pearce* does not preclude recovery of lost profits by the victim in this case. The language of that opinion may be limited to the peculiar circumstances of the case, in which the theft resulted in a breach of contract and resultant loss of profits. However, *Pearce* does not hold that "lost profits" are necessarily "consequential damages" that may never be recovered as economic loss. In the case at hand, if defendant kept for himself the proceeds of merchandise sales at his store, the "lost profits" are indeed part of the store's economic loss. Adding a profit margin to the cost of lost inventory would be too speculative to be a measure of restitution.

There is ample evidence in the record to conclude that defendant deprived the victim of the proceeds of sales, as well as inventory. While defendant never admitted stealing merchandise, he did admit that he failed to record sales, pocketing the money with intentions to repay. Based on such evidence, there was a reasonable basis for the court to find that the economic loss caused by defendant included lost profit as well as lost inventory as calculated by the victim.

Even though the auditor testified that his estimate of loss included a component of lost profit, we do not find this to be speculative under the circumstances of this case. The defendant admitted selling merchandise, pocketing the cash and not recording the sale. We presume defendant made these sales at the retail price, thus depriving the victim of the profit or mark-up on each of these sales. The inventory would appear missing during the audit since it was gone but the sale was not recorded. Given the defendant's own testimony these lost profits were not speculative.

The trial court's restitution award is affirmed.

EUBANK and KLEINSCHMIDT, JJ., concur.