832 P.2d 695

**STATE of Arizona, Appellee,**

v.

**Michael R. REYNOLDS, Appellant.**

**No. 1 CA–CR 90–1037.**

Court of Appeals of Arizona, Division 1, Department C.

May 28, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Diana P. Stabler, Asst. Atty. Gen., Phoenix, for appellee.

Henry J. Florence, Ltd. by Charles K. Ledsky, Phoenix, for appellant.

## OPINION

GRANT, Presiding Judge.

Appellant, Michael Reynolds ("defendant"), appeals from an order imposing restitution in the amount of $17,782.28. For the reasons stated below, we affirm the order of restitution as modified.

## FACTS AND PROCEDURAL HISTORY

Defendant was indicted on a class three felony of one count of possession of stolen property, namely a 1983 Mercedes Benz 380 belonging to the victim. He pled guilty to an amended count of attempted possession of stolen property, a class 4 felony. The plea agreement provided *inter alia* that the defendant would pay restitution to the victim and/or his insurance company in an amount not to exceed $25,000.00.

The defendant was sentenced to a four-year presumptive term of imprisonment. A restitution hearing was subsequently held. Through documentary evidence, the state established that the victim purchased the Mercedes Benz in 1986 for $33,500.00. The vehicle was insured by United Services Automobile Association ("USAA"). The Mercedes was stolen on approximately November 3, 1988, and on December 8, 1988, USAA paid the victim the fair market value of $32,927.00. This amount covered the victim's loss except for a $250.00 deductible.

The vehicle was recovered on September 27, 1989. It had been repainted from yellow to white and the seats had been dyed from tan to black. As was customary for USAA, the vehicle was sold by M & M Auto Storage Pool at closed auction to licensed auto rebuilders and dealers. USAA received the salvage values of $781.50 for the hard top and $14,613.22 for the remainder of the vehicle, for a total of $15,394.72. The state thus claimed the defendant owed restitution to the victim in the amount of $250.00 for the deductible and $17,532.28 to USAA. The latter amount represents the difference between the amount paid to its insured, or the fair market value of the vehicle on the date of the loss, and the vehicle's salvage value on the date of resale.

The defendant's evidence at the restitution hearing consisted of the testimony of Jack Morgan, a casualty claims manager for Allstate Insurance who is also a friend of the defendant's family. Morgan testified that, in his opinion, the wholesale value of the Mercedes on the date it was stolen was $30,111.00 and its retail value was $38,554.00. Although he did not see the vehicle at the time it was recovered, Morgan viewed photographs of it. Based

on the photographs, discussions with the defendant and a review of a condition report prepared by USAA, Morgan assumed the vehicle was in good condition when recovered and estimated its wholesale value at that time as $29,944.00 and its retail value as $39,381.00. Also, the police reports indicated that, at the time of the theft the estimated value of the vehicle was $31,000.00 and at the time of recovery its estimated value was $30,000.00.

Morgan further testified that because M & M Auto Storage Pool does not conduct a public auction, USAA did not receive fair market value for the vehicle. However, there was no evidence presented indicating that the sale by M & M Auto Storage Pool was not conducted in accordance with ordinary and customary business practices.

The trial court ordered defendant to pay $250.00 in restitution to the victim. This amount is not in dispute. The court also ordered defendant to pay restitution to USAA in the sum of $17,782.28. Restitution is to be paid at the rate of $100.00 per month. Defendant filed a timely notice of appeal from the order of restitution only. Defendant raises a sole issue on appeal:

Did the trial court use an inappropriate method to determine economic loss to USAA and thereby abuse its discretion in ordering defendant to pay restitution to USAA in the amount of $17,782.28?

## DISCUSSION

The parties agree that an insurance company that suffers an economic loss is a victim of a crime and is entitled to restitution. *State v. Morris*, 106 Ariz.Adv.Rep. 44, (App. Feb. 18, 1992); *State v. Merrill*, 136 Ariz. 300, 301, 665 P.2d 1022, 1023 (App.1983). Defendant argues, however, that the court abused its discretion by determining restitution owed to USAA based upon the difference between the fair market value of the vehicle on the date of the theft and the salvage value at the time of resale. Relying on *State v. Pearce*, 156 Ariz. 287, 751 P.2d 603 (App.1988), defendant argues that the amount of restitution should have been based on the difference between fair market value at the time of

theft and fair market value at the time of recovery or, essentially, the measure of damages used in a civil action for conversion or trespass to chattels.

Relying also on *Gulf Homes, Inc. v. Goubeaux*, 124 Ariz. 142, 602 P.2d 810 (1979), defendant argues that the sale by M & M Auto Storage Pool was not conducted in a "commercially reasonable manner" as that term is defined under the Uniform Commercial Code as adopted in Arizona. Therefore defendant contends that he should not be bound by the company's method of disposing of recovered property. Defendant asks this court to modify the restitution award in accordance with a more appropriate method of setting restitution, although he does not specify what the proper amount should be.

The state argues that the restitution order was supported by sufficient evidence and that the court did not abuse its discretion in setting the amount. While we agree with the state that the court did not err in the methodology it used to determine restitution, we believe the court improperly calculated the amount owed to USAA.

The applicable statutes are as follows:

Ariz.Rev.Stat.Ann. ("A.R.S.") section 13-603(C) provides:

If a person is convicted of an offense, the court shall require the convicted person to make restitution to the person who is the victim of the crime or to the immediate family of the victim if the victim has died, in the full amount of the economic loss as determined by the court and in the manner as determined by the court pursuant to chapter 8 of this title.

A.R.S. section 13-804(B) provides:

In ordering restitution for economic loss pursuant to § 13-603, subsection C or subsection A of this section, the court shall consider all losses caused by the criminal offense or offenses for which the defendant has been convicted.

Under A.R.S. section 13-105.11, economic loss is defined as:

[A]ny loss incurred by a person as a result of the commission of an offense.

Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

A trial court has discretion to set the amount of restitution according to the facts. *State v. Taylor,* 158 Ariz. 561, 564, 764 P.2d 46, 49 (App.1988). The award of restitution must "bear ... a reasonable relationship to the victim's loss...." *State v. Scroggins,* 168 Ariz. 8, 9, 810 P.2d 631, 632 (App.1991).

The legislature's enactment of A.R.S. section 13–603(C) "reflects its sense of responsibility for victims." *State v. Howard,* 168 Ariz. 458, 459, 815 P.2d 5, 6 (App.1991) (citing *State v. Monick,* 125 Ariz. 593, 595, 611 P.2d 946, 948 (App.1980)). Thus, a trial court is required to determine the full amount of the victim's loss to make the victim whole. *See id.* (holding that future medical expenses and lost wages are proper items of restitution). However, restitution in a criminal case and damages in a civil case must be clearly distinguished. *Pearce,* 156 Ariz. at 289, 751 P.2d at 605. As stated in *State v. Iniquez,* 169 Ariz. 533, 535, 821 P.2d 194, 197 (App.1991):

> One of the purposes of mandatory restitution is reparation to the victim. The goal is to make the victim whole. Although reparation is one purpose of restitution, the goals and methods of restitution in a criminal case differ from those of damages in a civil action.

> Another goal of restitution is rehabilitation of the convicted person. Such a requirement forces an offender "to recognize the specific consequences of his criminal activity and accept responsibility for those consequences." (citations omitted.)

■ Because of the differences between a civil action for damages for conversion or trespass to chattels and a criminal action for theft where restitution is imposed, the measure of "damages" that may be applicable in a tort context is not necessarily the same measure of "economic loss" that applies in a criminal context.

■ Under the statutory scheme for restitution, in determining the full amount of economic loss, the court must consider all losses caused by the criminal offense. A.R.S. § 13–804. Economic loss means "any loss incurred by a person as a result of the commission of the offense," except "damages for pain and suffering, punitive damages or consequential damages." A.R.S. § 13–105.11. Losses directly attributable to the offense, those which "flow" from it, are included within the definition of economic loss and are not considered consequential damages. *Morris,* 106 Ariz. Adv.Rep. at 46, 47; *Pearce,* 156 Ariz. at 289–290, 751 P.2d at 605–606; *State v. Wideman,* 165 Ariz. 364, 798 P.2d 1373 (App.1990).

Under this analysis, we believe the loss suffered by USAA was directly attributable to the crime and was not a consequential damage. In this respect, defendant's reliance on *State v. Pearce* is misplaced. There, Pearce was convicted of theft of equipment that was leased. The court ordered him to pay not only for the loss of value to the property, but also the amount the leasing company was owed under the equipment lease less the resale value of the equipment recovered. The court in discussing the term "economic loss" held:

> Pearce's theft or damaging of the equipment here resulted in loss of equipment or its value, but the resulting breach of the lease and lost profits are consequential damages resulting from Pearce's conversion. Such lost profits do not "flow" from the acts to which Pearce pled guilty.

156 Ariz. at 289, 751 P.2d at 601. The court then stated:

> In the present case, the offense is theft, and the corresponding civil action would be one for conversion or trespass to chattels, and not breach of a lease contract. The measure of damages in such an action would be the market value of the goods if not recovered, if destroyed or if damaged beyond repair. If the goods are recovered, the measure of damages

would be the difference in value of the items before and after the conversion, perhaps allowing credit against the judgment for any resale or salvage proceeds. *Id.* Contrary to defendant's argument, the court was not enunciating a general rule that the amount of restitution in a theft case must be equivalent to the measure of damages in the "corresponding civil action." Rather, the court was simply attempting by illustration to distinguish loss that was the direct result of the theft from lost profits that were consequential to the theft. We affirm the general proposition from *Pearce* that the victim is entitled to recover the difference between the fair market value of the property at the time it was stolen and the fair market value of the property at the time it was recovered. If not recovered, the measure of the victim's full economic loss is the fair market value of the property at the time of the loss. *State v. Ellis,* 108 Ariz.Adv.Rep. 28, (App. March 10, 1992). Under federal sentencing law, the defendant must pay the victim an amount equal to the greater of the value of the property on the date of the damage, loss or destruction *or* the value of the property on the date of sentencing. 18 U.S.C. section 3663(b) (1988 of Supp.1990).

The defendant's reliance upon *Gulf Homes v. Goubeaux,* is also misplaced. There, the court discussed the issue whether a sale following repossession of a mobile home held in accordance with the Uniform Commercial Code was conducted in a "commercially reasonable manner." Defendant alleges that the sale in this case was not commercially reasonable because it was not designed to obtain fair market value for the vehicle. However, we find it inappropriate to import a mandatory standard codified in the Uniform Commercial Code into the criminal restitution context. Defendant is not a buyer and USAA is not a secured party. As noted by the state, concepts such as "failure to mitigate" or "not commercially reasonable" simply do not fit into the framework of the criminal law. Restitution is *not* governed by the standard of what is commercially reasonable under the U.C.C., and is not governed by all the principles of tort law.

It is apparent from the record that USAA's actions were not an attempt to obtain the fair market value for the property. However, USAA's method of selling the vehicle would have been the same whether or not there was a criminal defendant and the possibility of restitution. There was testimony that this method of sale was customary for USAA.

As we have previously stated:

Restitution is not surrounded by the panoply of protections afforded a defendant at trial. So long as the procedure leading to a restitution award is such that defendant is given the opportunity to contest the information on which the restitution award is based, to present relevant evidence, and to be heard, due process is satisfied.

*State v. Fancher,* 169 Ariz. 266, 268, 818 P.2d 251, 253 (App.1991) (citations omitted).

There may be legitimate reasons why an insurance company is willing to sell recovered property at a closed auction, even when that method appears to bring less than a sale on the open market would bring. For example, under the agreement with the salvage company, the salvage company may handle all the retrieval, storage and sale arrangements for all the property an insurer is forced to salvage. Indeed, the defendant's witness, Jack Morgan, alluded to this:

Q. [County Attorney] Isn't it customary for insurance companies to—other than State Farm—to auction off cars at dealers-only auctions?

A. It depends on the insurance company. Some of them do not work through salvage pools, others do. And Allstate works through M and M Salvage Pool, except for cars that would be of exceptionally good quality, then we would offer them to car dealers rather than selling them through the pool, because we'd realize a lot more money out of them.

One of the advantages of working through the pool is you give up a little bit on value in order to have them take everything you've got.

Here the defendant had the opportunity to contest the restitution information and

in fact called his own expert to testify as to the fair market value of the vehicle. Whether or not to believe the defendant's witness is within the judge's discretion. One can infer, as a matter of common sense, that the price received was some reflection of the value of the car. The defendant's witness had never actually seen the car. Restitution does not require proof beyond a reasonable doubt. *Scroggins*, 168 Ariz. 8, 810 P.2d 631. The determination of restitution is part of the sentencing function of the court and is bound by different rules than the adjudication of guilt. *Fancher*, 169 Ariz. at 268, 818 P.2d at 253.

However, we do not condone an insurance company or other victim inflating their loss through disposal of property in a commercially unreasonable manner or, conversely, padding its value in order to thereby perpetrate a second theft by means of restitution. There is no showing that either was done in this case. *See United States v. Tyler*, 767 F.2d 1350 (9th Cir. 1985) (reduction in value of timber stemmed from government's decision to hold timber during period of declining prices and therefore not properly part of restitution).

There was no abuse of discretion in the methodology the court used in determining the amount of restitution owed to USAA. However, the court's minute entry incorrectly states the amount of restitution as $17,782.28, which erroneously includes the $250.00 deductible amount payable to the victim. This amount was separately ordered to be paid to the victim. The state requested that only $17,532.28 be paid to USAA for restitution.

Therefore, we affirm the order of restitution but modify it pursuant to A.R.S. section 13–4037 to reflect that restitution owed to USAA is in the amount of $17,-532.28.

EUBANK and KLEINSCHMIDT, JJ., concur.