864 P.2d 1078

**STATE of Arizona, Appellee,**

v.

**Jean Paul BARRETT, Appellant.**

**No. 1 CA–CR 92–1062.**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 12, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Rory L. Whipple, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GERBER, Presiding Judge.

Appellant Jean Paul Barrett (Barrett) appeals from the trial court's award of restitution for lost profit. For the following reasons, we vacate that portion of the restitution award to which he objects.

### FACTS AND PROCEDURAL HISTORY

Pursuant to a plea agreement, Barrett pled guilty to three counts of attempted fraudulent schemes and artifices, class three felonies, designated nondangerous, repetitive offenses. The agreement stipulated that each count carry one prior felony conviction and that Barrett pay restitution to his victims.

At the restitution hearing, the trial court attempted to determine the amount of loss sustained by Pioneer Ford, one of Barrett's victims. Barrett had purchased a 1986 Jeep Cherokee from Pioneer Ford with a bad

check. The police returned the Jeep to the dealership after approximately two to three weeks.

The testimony of Jay Berger, Pioneer Ford's Finance Manager, was the only evidence introduced regarding the amount of the dealership's loss. Berger's testimony suggested that the Jeep was returned in the same condition as when it was sold to Barrett. However, Berger claimed that the dealership lost the $1,500 to $2,000 profit it typically realizes on vehicles like the Jeep.

Berger explained that Barrett purchased the vehicle before the publication of the January, 1992 Kelly Blue Book (blue book). The blue book established the value of used vehicles as of its publication date. He testified that the blue book was published at the "beginning of the month." However, he did not know if the publication date was January 1, 1992, as opposed to later in the month. The new publication substantially reduced the value of the Jeep. After reacquiring the vehicle, the dealership purportedly had to sell it for no profit. Berger testified that the inability to earn a profit was due to the Jeep's diminished blue book value after its return. According to Berger, the vehicle possibly could have been sold for a "considerable profit" if it had been available to the dealership to sell.

Consistent with the plea agreement, the trial court sentenced Barrett to concurrent, aggravated 15-year prison terms on each of the three counts to run consecutively to the sentence he already was serving. The judge also awarded restitution to Barrett's victims, including $2,000 to Pioneer Ford to compensate it for lost profit. Barrett appeals this aspect of the award.

## DISCUSSION

■ A trial court has discretion to set the amount of restitution according to the facts. *State v. Reynolds,* 171 Ariz. 678, 681, 832 P.2d 695, 698 (App.1992). Barrett contends the trial court abused its discretion in awarding $2,000 restitution to Pioneer Ford. We agree.

Arizona Revised Statutes Annotated section 13–603(C) requires a court to order restitution to a defendant's victim for economic loss:

> If a person is convicted of an offense, the court shall require the convicted person to make restitution to the person who is the victim of the crime ... in the full amount of the economic loss as determined by the court and in the manner as determined by the court....

The definition of economic loss employs a "but for" test which excludes consequential damages:

> "Economic loss" means any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred *but for* the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or *consequential damages.*

A.R.S. § 13–105(11). (Emphasis added.)

■ There must be a causal connection between the criminal conduct and the claimed loss for a loss to be an economic loss, rather than mere consequential damages. *State v. Morris,* 173 Ariz. 14, 17, 839 P.2d 434, 437 (App.1992). In *Morris,* we upheld the trial court's order that a defendant pay restitution to his victim and her insurance company for losses associated with repair of damage he caused to her vehicle. In doing so, we sought to clarify the distinction between "economic" and "consequential" loss. *Id.*

We pointed out in *Morris* that economic loss "flow[s] directly from the criminal activity." *Id.* (quotations omitted). Although restitution in a criminal case and damages in a civil case are clearly different, *State v. Reynolds,* 171 Ariz. at 681, 832 P.2d at 698, there are some similarities. We noted in *Morris* that economic loss is the "functional equivalent" of actual damages from the civil arena. *Morris,* 173 Ariz. at 17, 839 P.2d at 437. In making that comparison, we defined actual damages as

damages in satisfaction of, or in recompense for, loss or injury sustained; such compensation or damages for an injury as follow from the nature and character of the act, and will put the injured party in the position which he was in before he was injured.

*Id.*

Consequential damages, on the other hand, are only indirectly related to the criminal conduct:

Consequential damages are such as are not produced without the concurrence of some other event attributable to the same origin or cause; such damage, loss, or injury as does not flow directly and immediately from the action of the party, but only from the consequences or results of such act. The term may include damage which is so remote as not to be actionable.

*Id.*

Division Two of this court previously disallowed restitution for a profit loss which was merely consequential. *State v. Pearce,* 156 Ariz. 287, 751 P.2d 603 (1988). However, we have held that lost profits are recoverable where the state shows that the loss actually was caused by the defendant's criminal conduct. *State v. Young,* 173 Ariz. 287, 289, 842 P.2d 1300, 1302 (1992).

Thus, the question is: would Pioneer Ford have sustained its purported loss but for defendant's criminal conduct? The state's answer relies on *Young.* In that case, the defendant was convicted of theft after his employer discovered it was missing inventory. The trial court ordered the defendant to pay restitution to his employer. The ordered restitution was based on the actual proceeds retained by the defendant on unrecorded sales of the employer's inventory. The sales amount included the employer's profit on the inventory. We held that the profit was correctly included in the restitution award. *Id.*

However, the record in *Young* contained evidentiary support for concluding that the lost profit satisfied the "but for" test of A.R.S. section 13–105(11), unlike the record in the present case. In *Young,* the defen-

dant actually stole cash from the unrecorded merchandise sales, not the inventory itself. We noted in that case that if the defendant "kept for himself the proceeds of merchandise sales at his store, the 'lost profits' are indeed part of the store's economic loss." *Id.* Thus, "there was a reasonable basis for the [trial] court to find that the economic loss caused by defendant included lost profit as well as lost inventory as calculated by the victim." *Id.*

No such evidence was adduced in the instant matter to establish a causal relationship between Barrett's criminal activity and Pioneer Ford's purported loss. There is only Berger's conclusory statement that Barrett deprived Pioneer Ford of its expected $1,500 to $2,000 profit. Berger attributed the loss to the Jeep's decline in blue book value during its absence from the dealer's lot. Berger testified that the blue book was published at the beginning of January. Barrett purchased the Jeep on December 31, 1991. Thus, the Jeep may have been absent from the lot for as briefly as only one day prior to the issuance of the blue book if it was published on the first day of the month.

The record contains no evidence that if Pioneer Ford had possession of the Jeep, Pioneer could have sold it for a higher price during that one-day period or during any other period prior to the publication of the blue book. Berger had no information about any potential buyers before the publication of the blue book. He did not indicate whether any similar vehicles at the dealership were sold during the relevant time. Further, he did not indicate the typical duration required to sell such vehicles. He was unaware of how long Pioneer Ford had been attempting to sell the Jeep prior to selling it to Barrett. Without this type of evidence, there is no means by which to determine whether, but for defendant's possession of it, the dealership could have sold the Jeep at a higher price during the undetermined period before its decline in blue book value.

Further, the record contains no evidence to support the amount of the award. The amount of restitution ordered must bear a

reasonable relationship to the victim's loss. *Matter of Maricopa County Juvenile Action*, 147 Ariz. 153, 155, 708 P.2d 1344, 1346 (App. 1985) (restitution order to pay victim's real estate commissions remanded because amount was speculative). In the present case, the only evidence is Berger's statement that Barrett deprived Pioneer Ford of its $1,500 to $2,000 profit margin. Berger did not indicate the amount Pioneer Ford paid for the vehicle. He also did not know when and for how much the vehicle ultimately sold following its return. Further, he did not provide the trial court with the blue book value.

*Young* does not support the present award as the state contends. We noted in *Young* that a victim's calculation of its loss must have a reasonable basis. 173 Ariz. at 288, 842 P.2d at 1301. We cautioned that simply "[a]dding a profit margin to the cost of lost inventory would be too speculative to be a measure of restitution." *Id.* at 289, 842 P.2d at 1302. Something more is required. In *Young*, "something more" was detailed testimony from the victim's internal auditor. The amount of restitution in that case was further substantiated by records the defendant himself kept on some of his thefts. *Id.*

No such evidence is present in this case. Berger could not testify as to any specific calculations that may have been used to arrive at the amount of the dealership's alleged loss. Thus, the trial judge improperly interpreted Berger's representations. *See State v. Reese*, 124 Ariz. 212, 215, 603 P.2d 104, 107 (App.1979) ("A party sued civilly has important due process rights, including appropriate pleadings, discovery, and a right to a trial by jury on the specific issues of liability and damages. The judge in the criminal trial should not be permitted to emasculate those rights by simply declaring his belief that the defendant owes a sum of money").

The state's assertion that any new vehicle depreciates upon leaving a dealer's lot is unsupported by the record. Further, that assertion is irrelevant as to *used* vehicles such as the Jeep. We can find no basis in the record for determining the amount of depreciation and certainly no basis that the correct amount is $2,000.

## CONCLUSION

We hold that the trial court abused its discretion in ordering restitution to Pioneer Ford based on the evidence before it. The record provides insufficient evidence to determine whether Pioneer Ford sustained any economic loss or whether the amount of the restitution award bears a reasonable relationship to the victim's loss. The award in this case was based on mere speculation. More is required to support a restitution award than the victim's unsupported assurances on the issues of loss causation and amount. We therefore vacate that portion of the trial court's order awarding restitution to Pioneer Ford in the amount of $2,000.

Pursuant to A.R.S. section 13–4035, we have searched the record for fundamental error and have found none. Accordingly, Barrett's convictions and sentences are affirmed.

GRANT and FOREMAN, JJ., concur.

NOTE: The Honorable JOHN FOREMAN, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.