IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————

**E.H.,**
*Petitioner,*

*v.*

**THE HONORABLE DAN SLAYTON, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF COCONINO,**
*Respondent Judge,*

**LILLIAN HESTER; JASON CONLEE; LENDA HESTER,**
*Real Parties in Interest.*

———————

No. CR-24-0245-PR
**Filed April 30, 2025**

———————

Petition for Special Action from the Superior Court in Coconino County
The Honorable Dan Slayton, Judge
Nos. CR2016-00433, CR2016-00434, CR2016-00435

**REVERSED AND REMANDED WITH INSTRUCTIONS**

———————

Memorandum Decision of the Court of Appeals, Division One
1 CA-SA 24-0034
Filed August 8, 2024

**VACATED**

———————

COUNSEL:

Colleen Clase (argued), Jessica Gattuso, Arizona Voice for Crime Victims, Phoenix, Attorneys for E.H.

Adam Zickerman, The Zickerman Law Office, Flagstaff, Attorneys for Jason Conlee

Gregory T. Parzych, Law Office of Gregory T. Parzych, Chandler, Attorney for Lillian Hester

Craig Williams (argued), Craig Williams Attorney at Law, P.L.L.C., Tucson, Attorney for Lenda Hester

Randall Udelman, Arizona Crime Victim Rights Law Group, Scottsdale, Attorneys for Amici Curiae Parents of Murdered Children and The Arizona Crime Victim Rights Law Group

David Euchner (argued), Pima County Public Defender's Office, Tucson, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

———————————

CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which VICE CHIEF JUSTICE LOPEZ, JUSTICES BOLICK, BEENE, MONTGOMERY, KING, and PELANDER (Retired)* joined.

———————————

CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1 In 2018, a jury convicted Lillian Hester of abusing and murdering Jack, her six-year-old nephew. [1] Lenda Hester (Jack's grandmother) and Jason Conlee (Lillian's boyfriend) pleaded guilty, respectively, to charges of child abuse and endangerment.

---

\* Justice Maria Elena Cruz is recused from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (retired) was designated to sit in this matter.

[1] To protect the identities of the murder victim, J.H., and petitioner, E.H., and to avoid the sometimes-confusing use of initials, we refer to them using fictitious names. Because two of the defendants have the same last names, we refer to all defendants by their first names to avoid confusion.

¶2            Jack's surviving half-sister, Elise, seeks more than $3 million from defendants as restitution for Jack's future lost wages.   The issue here is whether future lost wages of a murdered child are recoverable as restitution.   We decide they are.   The amount of this loss, however, must have a reasonable basis and cannot be the product of pure speculation or conjecture.

**BACKGROUND**

¶3            As Jack's half-sister, Elise is a victim of the defendants' crimes and is therefore entitled to seek restitution under the Victims' Bill of Rights ("VBR"), which is enshrined in the Arizona Constitution.   *See* Ariz. Const. art. 2, § 2.1(A)(8) (providing that a crime victim has the right "[t]o receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury"); A.R.S. § 13-4401(19) (expanding the definition of "victim" to include a murder victim's sibling); *E.H. v. Slayton* ("*E.H. I*"), 245 Ariz. 331, 334 ¶ 10 (App. 2018) (recognizing Elise as a victim).   Elise asked the superior court to order defendants to pay restitution for Jack's future lost wages in the amount of $3,322,880.20, "payable to [Jack's] estate."   She asserted that as Jack's half-sister "and next closest relative who is not a criminal defendant in this case, [she] is the appropriate person to make this claim on behalf of [Jack's] estate."[2]   To support her request, Elise submitted an expert's report regarding Jack's projected future lost earnings.   She also asked that her counsel be permitted to participate in any contested restitution hearing.

¶4            The defendants each opposed Elise's claim on several grounds, including waiver, standing, and that future lost wages of a murdered child are not recoverable as restitution.   Jason also argued that because he was convicted of endangerment, not murder, any future lost earnings did not result from his crime and therefore could not be recovered from him as restitution.   Defendants submitted their own expert's report, estimating the present value of Jack's lost wages, minus consumption, as between $153,712 on the low end and $919,598 on the high end.   Elise stated she would accept the defendants' high-end calculation.

---

[2]   Elise also sought restitution for mileage, which was paid by another defendant, Kimmy Wilson.   She also signaled she would later present a claim for future counseling expenses.   Those claims are not at issue here. Wilson is no longer subject to liability for restitution.   *See E.H. v. Slayton* ("*E.H. II*"), 249 Ariz. 248, 252 ¶ 3 n.1 (2020).

¶5 After holding oral argument on Elise's request, the superior court agreed that Elise could assert victims' rights on Jack's behalf as well as her own. But it also found that a murdered child's future lost wages constitute consequential damages, which are not recoverable as restitution. *See* A.R.S. § 13-603(C) (requiring payment of restitution only for victims' "economic loss"); A.R.S. § 13-105(16) (excluding consequential damages from the definition of "economic loss"). It therefore denied Elise's request for restitution representing Jack's future lost wages.

¶6 The court of appeals accepted jurisdiction of Elise's subsequently filed special action petition but denied relief. *E.H. v. Slayton* ("*E.H. III*"), No. 1 CA-SA 24-0034, 2024 WL 3722835, at *3 ¶ 14 (Ariz. App. Aug. 8, 2024) (mem. decision). The court agreed that Jack's future lost wages are consequential damages and therefore not subject to recovery as restitution. *Id.* at *2–3 ¶¶ 10–12. It reasoned that "[t]he causal nexus between the defendants' criminal conduct and [Jack's] future lost wages is simply too attenuated, both factually and temporally" to be economic loss recoverable as restitution. *See id.* at *3 ¶ 12.

¶7 We granted Elise's petition for review because whether a child murder victim's future lost wages are recoverable as restitution is an issue of statewide importance and capable of repetition. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶8 We review the superior court's denial of Elise's restitution claim for an abuse of discretion. *See State v. Reed*, 252 Ariz. 328, 331 ¶ 13 (2022). The court abused its discretion if it applied incorrect legal principles. *See id.* We review the court's interpretation of the constitution and applicable statutes de novo. *See id.*

### A. A Court May Award Restitution For A Victim's Reasonably Anticipated Future Economic Losses Caused By Criminal Conduct.

¶9 The VBR guarantees crime victims several rights designed "[t]o preserve and protect victims' rights to justice and due process." Ariz. Const. art. 2, § 2.1(A). If the person against whom the crime was committed was killed or incapacitated, the Constitution defines "victim" as "the person's spouse, parent, child or other lawful representative," unless that individual is incarcerated or is the accused. *Id.* art. 2, § 2.1(C). The

4

Victims' Rights Implementation Act ("VRIA"), A.R.S. § 13-4401 through § 13-4443, expanded this list to include a sibling, like Elise. *See* § 13-4401(19).

**¶10** We are concerned here with a victim's right to receive full restitution from persons "convicted of the criminal conduct that caused the victim's loss or injury." *See* Ariz. Const. art. 2, § 2.1(A)(8); *see also Reed*, 252 Ariz. at 330 ¶ 7 (stating that the right to prompt restitution includes the right to full restitution). Restitution reimburses the "economic loss" suffered by the victim. *See* § 13-603(C); *see also* A.R.S. § 13-804(B) (instructing the court to consider "all losses caused by the criminal offense" when ordering restitution for economic loss); *State v. Patel*, 251 Ariz. 131, 135 ¶ 14 (2021) (recognizing that restitution "restore[s] victims to the position they were in before the loss or injury caused by the criminal conduct"). "Economic loss" means "losses that would not have been incurred but for the offense," including "lost earnings" but excepting "damages for pain and suffering, punitive damages [and] consequential damages." § 13-105(16). Because restitution is not a penalty, it must be limited to the victim's actual loss. *See Town of Gilbert Prosecutor's Off. v. Downie ex rel. Cnty. of Maricopa*, 218 Ariz. 466, 469 ¶ 13 (2008). If the victim has died, restitution is paid to the victim's immediate family.[3] *See* § 13-603(C). Importantly, the victim may bring a civil lawsuit to recover other damages, including claims for pain and suffering, consequential damages, and punitive damages. *See Downie*, 218 Ariz. at 469 ¶ 14; A.R.S. § 13-807.

**¶11** The above-cited statutes collectively define the losses for which restitution can be ordered. *See State v. Wilkinson*, 202 Ariz. 27, 29 ¶ 7 (2002). Applying them, we have held that "restitution should be ordered for losses that (1) are economic; (2) would not have been incurred by the victim but for the criminal offense; and (3) were directly caused by the criminal conduct." *Reed*, 252 Ariz. at 330 ¶ 9 (citing *Wilkinson*, 202 Ariz. at 29 ¶ 7). For ease of reference, we refer to these requirements as the "*Wilkinson* test."

---

[3] The defendants here do not challenge the superior court's determination that Elise can claim restitution payable to Jack's estate for his economic losses.

**¶12**          This Court has not previously addressed whether yet-to-be-incurred losses, like future lost wages, qualify as "economic loss" under § 13-603(C), making them recoverable as restitution.   But the court of appeals addressed the issue in *State v. Howard*, 168 Ariz. 458, 459–60 (App. 1991).   The defendant there was convicted of aggravated assault based on his involvement with a traffic accident that severely injured the victim.   *Id.* at 459.   The defendant objected to paying restitution for the victim's future medical care and future lost wages.   *See id.*   The court of appeals rejected the defendant's argument, reasoning that compensating a victim for reasonably anticipated future losses caused by the criminal conduct is statutorily required to make the victim whole.   *See id.* at 459–60.   If such losses were not permitted, the court noted, "the amount of restitution owed to the victim could be dictated by the timing of the disposition of the charges against the defendant and of the victim's recovery" rather than the victim's actual losses.   *Id.* at 460.   The court cautioned, however, that the restitution award "must bear a reasonable relationship to the victim's loss," even if the damages are not "easily measurable."   *Id.* (cleaned up) (first quoting *State v. Scroggins*, 168 Ariz. 8, 9 (App. 1991); and then quoting *In re Maricopa Cnty. Juv. Action No. J-96304*, 147 Ariz. 153, 155 (App. 1985)); *see also State v. Morgan*, 248 Ariz. 322, 327 ¶ 17 (App. 2020) ("Because mandatory restitution is intended to make the victim whole, the victim's economic loss includes losses incurred after sentencing." (citing *Howard*, 168 Ariz. at 459–60)).

**¶13**          We agree with the *Howard* court's analysis and add other reasons to support it.   First, nothing in the definition of "economic loss" limits losses incurred by a victim to those realized at the time restitution is ordered.   *See* § 13-105(16).   Second, and as relevant here, "economic loss" includes "lost earnings," *see id.*, which are commonly considered as encompassing both past and future lost earnings.   *See Earnings*, Black's Law Dictionary (12th ed. 2024).   Logically, any victim who loses earnings due to bodily injury or death necessarily experiences those losses *after* the crime.   *See United States v. Cienfuegos*, 462 F.3d 1160, 1164 (9th Cir. 2006) (interpreting the federal victims restitution act).   Indeed, in the civil law arena, "[p]ast and future lost wages are an appropriate measure of damages under Arizona law."   *See Lewis v. N.J. Riebe Enters., Inc.*, 170 Ariz. 384, 397 (1992).   The key considerations in awarding future economic losses as restitution, as with already-incurred losses, are whether those losses would not have occurred but for the criminal conduct and whether that conduct directly caused the anticipated losses (prongs two and three of the *Wilkinson* test).

**¶14**        In sum, future economic losses, including lost earnings, can be awarded as restitution if they satisfy the *Wilkinson* test.   If so, and as discussed below, *see* Part B ¶ 27, the amount awarded must be reasonably related to the anticipated loss.   *See Howard*, 168 Ariz. at 460.

**B.       A Child Murder Victim's Future Lost Wages Can Be Awarded As Restitution.**

**¶15**        We next consider whether a child murder victim's future lost wages are "economic losses" that are recoverable as restitution.   The *Wilkinson* test's first two prongs are not at issue here.   Jack's alleged future lost wages are economic and would not have been incurred but for his murder.[4]   *See Wilkinson*, 202 Ariz. at 29 ¶ 7.   The parties' dispute centers on *Wilkinson*'s third prong: Did the murder directly cause Jack's future lost wages?   *See id.*

**¶16**        The *Wilkinson* test's third prong is included to ensure the exclusion of "consequential damages" from restitution orders, as required by § 13-603(C).   *See id.*   "Consequential damages" is a term of art imported by the legislature from the civil law context.   *See State v. Morris*, 173 Ariz. 14, 17 (App. 1992).   They are losses "not flow[ing] directly and immediately from the action of the party, but only from the consequences or results of such act."   *See Reed*, 252 Ariz. at 331 ¶ 11 (alteration in original) (quoting *State v. Slover*, 220 Ariz. 239, 242–43 ¶ 5 (App. 2009)).

**¶17**        Thus, under the *Wilkinson* test's third prong, "[i]f the loss results from the concurrence of some causal event other than the defendant's criminal conduct, the loss is indirect and consequential and cannot qualify for restitution under Arizona's statutes."   *Wilkinson*, 202 Ariz. at 29 ¶ 7.   Courts must award restitution only for losses that "flow directly from the defendant's criminal conduct, without the intervention of additional causative factors."   *Id.*   Aside from remaining faithful to statutory language, this limitation "also prevents the restitution statutes from conflicting with the right to a civil jury trial preserved by Arizona Constitution Article II, Section 23."   *Id.* ¶ 11; *see also Downie*, 218 Ariz. at 469 ¶ 14 (describing the restitution framework as "preserv[ing] the

---

[4]   Whether lost wages would have been incurred but for the crimes of child abuse and endangerment is not before us.   The superior court has not ruled on this issue.

proper place and function of a civil jury" to determine consequential damages).

**¶18** Prior Arizona cases exemplify application of the *Wilkinson* test's third prong. In *Wilkinson*, this Court concluded that a contractor's criminal conduct of contracting without a license did not cause the incomplete and faulty construction work for which the victim-customer sought restitution. *See Wilkinson*, 202 Ariz. at 29 ¶ 10. Because the "losses would not have occurred without the concurrence of a second causal event, [the contractor's] unworkmanlike performance," the victim-customer's losses were indirect, consequential damages and could not qualify for restitution. *See id.*

**¶19** In *State v. Barrett*, 177 Ariz. 46, 46–47 (App. 1993), the defendant used a bad check to buy a used Jeep from a dealership. The police returned the Jeep undamaged a few weeks later, and the dealership sold it for no profit. *See id.* at 47. The superior court awarded the dealership $2,000 for lost profits on the Jeep, relying on the dealership's claim that but for the criminal conduct, it would have sold the Jeep earlier for more money. *See id.* The court of appeals vacated the restitution order, finding that the claimed lost profit was an indirect, consequential damage. *See id.* at 48. The dealership's inability to earn a profit was due to the Jeep's diminished value as reflected in a new edition of the Kelly Blue Book, which was released one day after the defendant purchased the Jeep. *See id.* at 47. Thus, any lost profit from the defendant's criminal conduct was caused both by the criminal conduct and the blue book devaluation. *See id.* at 47–48.

**¶20** In *State v. Sexton*, 176 Ariz. 171, 172 (App. 1993), the defendant fired a gun at the front of a house, and the owners lost their insurance coverage as a result. The victim-owners obtained a new policy, but it did not include liability coverage like the old policy. *See id.* The court ordered as restitution any loss that occurred in the next three years that would have been covered under the old policy. *See id.* The court of appeals vacated the order, finding that it incorrectly awarded indirect, consequential damages. *See id.* at 173. It reasoned that if the victim-owners suffered a loss during the three-year period, that loss would not flow directly or immediately from the criminal conduct, but would also flow from other factors, including the victim-owners' own future negligence in causing harm to a third person. *See id.*

**¶21**         Turning to the case before us, the parties unsurprisingly take opposing positions.   Elise argues that the full-restitution mandate applies to all victims, regardless of age, and future lost wages for a child victim are not consequential merely because they may be difficult to ascertain.   The defendants counter, and the court of appeals agreed, that future lost wages for a six-year-old child are inherently "speculative" and "too attenuated, both factually and temporally," to be recovered as restitution.   *See E.H. III*, 2024 WL 3722835, at *3 ¶ 12.   They characterize any future lost wages as non-recoverable consequential damages.   *See id.* ¶ 13; § 13-609(C).

**¶22**         We agree with Elise.   As in *Howard*, where the criminal conduct directly caused the victim's future medical expenses and future lost wages, Jack's murder directly caused Elise's claimed loss.   Jack's future ability to earn wages was directly and immediately eliminated with his death, and no other causal events occurred or remained to occur to produce that result.   In other words, the loss was direct and immediate. This case is therefore unlike *Wilkinson*, *Barrett*, and *Sexton*, where something in addition to the criminal conduct had to occur to bring about the loss. Neither the VBR nor the VRIA differentiates between adult and child victims.   As such, Jack's future lost wages are not consequential damages; they are a direct loss and therefore satisfy the *Wilkinson* test's third prong. *See Wilkinson*, 202 Ariz. at 29 ¶ 7; *Reed*, 252 Ariz. at 330 ¶ 9.

**¶23**         The court of appeals reached a different conclusion.   The court professed to apply *Wilkinson*'s third prong but did not point to any event other than the murder as a cause for Jack's future lost wages.   *See E.H. III*, 2024 WL 3722835, at *3 ¶ 11.   Instead, the court effectively modified the third prong by asserting that "[t]he 'causal nexus' between the conduct and the loss cannot be 'too attenuated (either factually or temporally).'"   *See id.* (quoting *State v. Guilliams*, 208 Ariz. 48, 53 ¶ 18 (App. 2004)).   It then found that "myriad causal factors [existed] that would determine [Jack's] lifetime earnings," like his education level and socioeconomic conditions, making the causal nexus between the defendants' criminal conduct and Jack's future lost wages too attenuated to qualify the loss as restitution.   *See id.* ¶ 12.   Reasoning that the superior court "had no basis to validly calculate" Jack's future lost wages, the court of appeals affirmed the finding that the loss constituted consequential damages.   *See id.* ¶ 13.

¶24 We disagree with the court of appeals' analysis for two reasons. First, the "too-attenuated" principle applied by the court plays no role in deciding whether claimed losses are recoverable as restitution or unrecoverable as consequential damages. This principle was first cited in *Guilliams*, which in turn relied on *United States v. Vaknin*, 112 F.3d 579, 586 (1st Cir. 1997). *See Guilliams*, 208 Ariz. at 53 ¶ 18. The *Vaknin* court established the "too-attenuated" principle in interpreting the federal Victim Witness and Protection Act. *See Vaknin*, 112 F.3d at 582, 589–90 (citing 18 U.S.C. §§ 3663 (1994), 3664 (1990)). But the federal act differs in significant ways from the VBR and the VRIA. For example, unlike the VBR and A.R.S. § 13-603(C), the federal act does not require a court to order restitution for a victim's full economic loss and authorizes the court to forego the process if it would complicate or prolong proceedings. *See* 18 U.S.C. § 3663(a) (granting the court discretion whether to award restitution and in what amount); *id.* § 3663(a)(1)(B)(ii) (authorizing the court to decline ordering restitution if "the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims"). In this context, limiting causation to losses with factual and temporal proximity to the criminal conduct furthers the federal act's provisions. Also, in contrast to A.R.S. § 13-603(C), the federal act does not explicitly exclude consequential damages from a restitution order. *See* 18 U.S.C. §§ 3663, 3664. Thus, unlike *Wilkinson*'s interpretation of Arizona law, *Vaknin*'s interpretation of federal law did not focus on detecting and excluding such damages.

¶25 Moreover, *Vaknin*'s "too-attenuated" principle conflicts with the *Wilkinson* test because the former would preclude some losses directly caused by the criminal conduct. For example, to demonstrate what constitutes factual remoteness, *Vaknin* cited a case where the defendant had been convicted of computer fraud and ordered to pay restitution for the victim's expenses in meeting with investigators to discuss the case. *See Vaknin*, 112 F.3d at 589 (citing *United States v. Sablan*, 92 F.3d 865, 870 (9th Cir. 1996)). The court in *Sablan* struck these amounts because they were "not connected closely enough" to the criminal conduct. *See id.* Under § 13-603(C), however, such losses would have been recoverable as restitution, assuming the victim met with the investigator as a direct consequence of the criminal conduct. *See Wilkinson*, 202 Ariz. at 39 ¶ 7; *see also State v. Madrid*, 207 Ariz. 296, 300 ¶ 10 (App. 2004) (holding that reasonable expenses incurred by murder victim's children to attend trial qualified as economic losses and thus children were entitled to restitution).

The *Wilkinson* test appropriately addresses the type of losses that can be recovered as restitution. Arizona courts should not apply *Vaknin*'s "too-attenuated" principle in applying the test's third prong.

¶26 Second, the court of appeals mistakenly conflated the cause of Jack's future lost wages with the calculation of that loss. *See E.H. III*, 2024 WL 3722835, at *3 ¶ 13 (reasoning that Jack's future lost wages are consequential damages because "so many undetermined causal factors contributed to the six-year-old [Jack's] projected earnings that the trial court had no basis to validly calculate an amount"). These are separate inquiries. If criminal conduct directly caused a victim's loss, as determined under the *Wilkinson* test, any uncertainty in calculating that loss does not negate the causation finding. Rather, once the right to restitution is established, the inquiry turns to whether the victim has sufficiently demonstrated the amount of the loss so that restitution can be ordered.

¶27 The victim must provide a reasonable basis for estimating the incurred loss. *See Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963). Conjecture and speculation alone cannot form that basis. *See id.* Instead, the victim's evidence "must make an 'approximately accurate estimate' possible." *Id.* (quoting *Martin v. LaFon*, 55 Ariz. 196, 200 (1940)). The evidence required to establish future lost wages depends "on the individual circumstances of each case and, although absolute certainty is not required, the [fact finder] must be guided by some rational standard." *Felder v. Physiotherapy Assocs.*, 215 Ariz. 154, 162 ¶ 38 (App. 2007) (quoting *Short v. Riley*, 150 Ariz. 583, 586 (App. 1986)); *see also Lewis*, 170 Ariz. at 397 ("Once the right to damages is established, uncertainty as to the amount of damages does not preclude recovery."); *Howard*, 168 Ariz. at 460 (stating that even if a victim's loss is not "easily measurable," any restitution amount must still bear a reasonable relationship to the loss); Restatement (Second) of Torts § 912 cmt. a. (Am. L. Inst. 1979) (explaining that injured persons should provide a "definiteness of proof as to the amount of damage as far as is reasonably possible" and noting that "an injured person [should] not be deprived of substantial compensation merely because he cannot prove with complete certainty the extent of harm").

¶28 Here, the superior court did not consider whether Elise sufficiently demonstrated the amount of Jack's future lost wages because it incorrectly found that the loss constituted nonrecoverable consequential damages. Therefore, we remand to that court to determine the amount of restitution, if any, to award for Jack's future lost wages. Should the court

determine that the record lacks "sufficient evidence to support a finding of the amount of restitution," it may conduct a restitution hearing. *See* § 13-804(G).

**CONCLUSION**

**¶29** For the foregoing reasons, we vacate the court of appeals' decision. We reverse the superior court's judgment declining to award Jack's future lost wages as restitution. We remand to that court to decide whether Elise has sufficiently demonstrated the amount of those wages and, if necessary, conduct a hearing pursuant to § 13-804(G).