# In re Estate of Elias Boisvert a/k/a Elias B. Greenwood

[370 A.2d 209]

No. 131-76

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed February 1, 1977

*Young and Monte*, Northfield, for Plaintiff.

*Gary D. McQuesten* of *Richard E. Davis Associates, Inc.*, Barre, for Defendant.

**Hill, J.** Sometime in early July of 1960, the plaintiff-appellee Edith Borry entered into an arrangement with the decedent Elias Greenwood whereby Miss Borry agreed to work on a "live-in" basis for the deceased. For the most part, room, board, and expenses for necessities were supplied by Mr. Greenwood. Although a specific salary was never discussed, Mr. Greenwood was aware that Miss Borry had been earning some $100.00 a week at her prior job, and had assured her that she would be "better off" working for him. For more than thirteen years, until decedent's death in October, 1973, Miss Borry lived with and worked for the decedent on a virtually uninterrupted basis. In response to Miss Borry's inquiries concerning compensation for her work, decedent allegedly informed her that she would be paid but that he was holding her wages so that she would not spend them frivolously.

Upon Mr. Greenwood's death it was revealed that Miss Borry had been left unprovided for in his will. Accordingly, in December, 1973, Miss Borry filed a claim against the estate for some $75,000.00 - the alleged value of her services over the thirteen-year period.

Following hearings held before commissioners duly appointed by the Washington District Probate Court, findings were issued in which the commissioners allowed Miss Borry's claim in the amount of $36,100.00. Both parties to the dispute, Miss Borry and the estate as represented by the executors, filed appeals from the commissioners' determination.

The appeals were ordered consolidated and trial by jury was had in Washington Superior Court. On April 15, 1976, the jury returned a verdict for the plaintiff, awarding her $74,000.00 in damages. Judgment in this amount plus interest was ordered entered for Miss Borry. The defendant thereupon moved for judgment notwithstanding the verdict, for remittitur, for an amended judgment, and, in the alternative, for a new trial. These motions were heard and denied by the trial court. The defendant estate now appeals the judgment and order rendered against it.

Counsel for appellant has assigned and briefed the following points for consideration by this Court: (1) Was it error for the trial court to allow into evidence a certified copy of the inventory of decedent's estate? (2) Did the appellant waive the right to object, pursuant to 12 V.S.A. §§ 1602, 1603, to appellee's testimony at trial when it had failed to object to the same testimony offered at the hearing before the commissioners? (3) Whether the verdict rendered by the jury was excessive and unsupported by the evidence? (4) Whether the nature of the relationship existing between appellee and the decedent gave rise to a presumption that her services were gratuitous?

■ In respect to this last point of alleged error cited by appellant, it appears from a review of the record that this particular issue was never adequately raised at trial, nor was any objection entered as to the lower court's instructions on the subject of relationships and the presumptions engendered thereby. Thus, in accord with the long-standing policy of this Court, we will forego review of this particular question. *Merrill v. Reed*, 123 Vt. 248, 185 A.2d 737 (1962); *Langevin* v. *Gilman*, 121 Vt. 440, 159 A.2d 340 (1960).

## (I)

The question of whether the certified copy of the inventory of the Greenwood estate was properly admitted into evidence turns on the materiality of that document to the issues at stake.

■ Fundamentally, the case involves the existence or nonexistence of an agreement, express or implied, between appellee and the decedent regarding compensation for appellee's services over the period in question. In order for appellee to establish her claim, she was required to show a mutual expectation of payment. In lieu of an express agreement to that effect, appellee could satisfy her burden only by way of evidence of the circumstances under which these services were performed, the relative situations of the parties and their financial circumstances. *In re Peters Estate*, 116 Vt. 32, 38, 69 A.2d 281 (1949). The general rule is that evidence of a person's wealth is not admissible to show that he entered into any contract sought to be established. However, in the case of *Andrews* v. *Watkins' Estate*, 104 Vt. 321, 160 A.176 (1932), this Court ruled that if the course of the trial brings to light certain circumstances that make it proper and reasonable to do so, such evidence may and should be admitted. It is true that the Court restricted its ruling in that case to evidence of wealth at the time the alleged contract was entered into. However, we feel that the reasoning of that case is not inapposite to the dispute at hand. Here, the evidence introduced to support appellee's claim shows that the decedent lived under circumstances that are commonly associated with a status akin to poverty. The evidence of the living conditions shared by Miss Borry and Mr. Greenwood over the 13-year period is of the sort tending to lead one to conclude that it would hardly be reasonable to suppose that any mutual expectation of payment had existed between the two at the inception of the relationship. The inventory statement and daily financial records of the deceased were offered as bearing upon the probability of what otherwise would appear to be a most unlikely agreement. The essence of Miss Borry's claim is that the decedent agreed to pay her in return for her residing with and working for him. The inventory statement, together with the accounts scrupulously kept by decedent over the years, show, by a process of tracing through time, what Mr. Greenwood was worth at the time in question. In this fashion, then, relevant

evidence connects the inventory to the point when the relationship was initiated. Applying the rule of *Andrews* v. *Watkins' Estate*, we think that, under the circumstances of this case, documentary proof of decedent's ample means would have legitimate bearing upon the question whether he and Miss Borry shared an agreement as to payment. See *Blaisdell* v. *Davis*, 72 Vt. 295, 307, 48 A. 14 (1900). Consequently, the certified copy of the Greenwood Estate inventory was properly admitted over objections aimed at its materiality.

## (II)

The second point of error argued by the appellant is that the trial court erred by allowing appellee to testify as to the existence and nature of her agreement with decedent. In support of its argument, appellant raises the prohibitions of 12 V.S.A. §§ 1602, 1603, commonly referred to as the "Deadman's Statute".

It appears from the record that at the hearing before the commissioners appellee gave substantially the same testimony relative to the merits of her claim as was presented at trial. The executors of the estate were present at this hearing, yet no objection of any sort was entered in respect to appellee's testimony.

It has consistently been held by this Court that under circumstances such as those operant here, the prohibitory mandate of 12 V.S.A. §§ 1602, 1603 is deemed waived by the non-objecting party, and the other party is to be allowed to testify. *Collins* v. *Estate of Collins*, 104 Vt. 506, 509, 162 A. 361 (1932); *Shearer* v. *Welch*, 126 Vt. 106, 223 A.2d 552 (1966). Given the bias in favor of competency, we see no compelling reason to abandon this permissive procedural rule in favor of that proffered by appellant. *Lawrence* v. *Werblow*, 122 Vt. 374, 173 A.2d 157 (1961).

## (III)

As the final citation of error, appellant argues that given the state of the evidence the monetary award rendered by the jury was excessive and that, as a result, the trial court erred by denying appellant's motions for remittitur and a new trial on the issue of damages.

In the instant case, there was no showing of any definite standard by which damages could be computed. The only evidence produced at trial was appellee's 1960 wages as a mill worker, and the hourly rate generally paid housekeepers. In light of the lack of any certain method of ascertaining the amount due, the sum to be awarded rested in the judgment of the jury.

In the case of *Jackson* v. *Rogers*, 120 Vt. 138, 150, 134 A.2d 620 (1957), we reaffirmed the long-standing rule to be applied in circumstances such as those present here:

> If the verdict can be justified upon any reasonable view of the evidence, it must stand. To warrant interference where there is no standard of damages disclosed by a contract, or otherwise ascertainable by exact evidence of pecuniary loss, the amount must be clearly shown to have been grossly insufficient or excessive and the fact that the verdict has received the express approval of the trial court inclines us strongly in its favor.

Review of the record below demonstrates that the jury's verdict was amply supported by the evidence. Testimony of those familiar with appellee over the thirteen-year period shows that the services rendered by her far transcended those normally associated with the role of housekeeper alone. It was, of course, proper for the jury to consider the nature and extent of those services performed by Miss Borry in arriving at its verdict. Appellant's motions questioning this exercise of the judgment of the jury were addressed to the discretion of the trial court. On the basis of the evidence before us, we refuse to substitute our judgment for that of the jury, nor will we substitute our discretion for the discretion of the trial court. *Mullet* v. *Milkey*, 113 Vt. 42, 45, 29 A.2d 806 (1943).

*For the foregoing reasons, the judgment and order of the Washington Superior Court is affirmed.*