WILLARD HEMKEN, Plaintiff-Appellant, *v.* THE FIRST NATIONAL BANK OF LITCHFIELD *et al.*, Defendants.—(MARILYN HEMKEN, Plaintiff; WERNER MOTOR COMPANY, Defendant-Appellee.)

Fourth District   No. 15405

Opinion filed September 7, 1979.—Rehearing denied October 5, 1979.

Peter K. Woody, of Gillespie, Cadigan and Gillespie, of Springfield, for appellant.

Harold O. Werner, of Springfield (Michael W. Hogan, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

A repossessed truck tractor.

No notice of intended sale.

Valid sale? No.

We reverse and remand.

Willard and Marilyn Hemken brought suit to recover damages for the failure of the First National Bank of Litchfield and Werner Motor Company to provide them with a notice of the intended sale of a repossessed 1971 GMC Astro tractor. The trial court granted the bank's motion to dismiss as to it and the case proceeded to a bench trial where a directed verdict was entered in favor of defendant, Werner Motor Company. Only the propriety of the entry of that directed verdict is questioned in this matter, and only Mr. Hemken appeals.

The preliminary facts are not disputed. Hemken purchased a used tractor from the defendant on March 8, 1974, for a total deferred payment price of $18,280.52. This same vehicle was refinanced in May 1975 for a deferred payment price of $11,731.60. Defendant, Werner Motor Company, then assigned the contract to the First National Bank of Litchfield with full recourse.

Sometime during August 1976 plaintiff was in default on the contract which then had an outstanding balance of $7,389.22. The bank made demand for the collateral and then contacted the defendant who picked up the tractor and paid the total amount due on the contract.

The repossessed tractor was later sold to another dealer for the sum of $7,150. Jesse Werner (president of defendant) testified that the sale was a "wholesale" transaction and that the retail value of the tractor would have been approximately $7,500. He explained that the reason it was listed as a wholesale transaction was because the company's vice president did not receive a commission when he sold a truck. Thus, when such a sale was made, it was listed as a wholesale transaction for the benefit of the bookkeeping department to indicate that no commission was due a

salesman. Therefore, if this tractor had been sold for its retail value of $7,500, a commission of approximately $400 would have been paid.

It is undisputed that no notice of intent to sell was sent to plaintiff prior to the sale of this tractor. Following the repossession, plaintiff did receive a letter from the bank notifying him of the bank's intent to apply for a repossession title. After receipt of this letter, Willard Hemken contacted a friend, Harry Kennedy, to ascertain what would be required in order to file an affidavit of defense which had been referred to in the bank's letter. Hemken testified that he then contacted the defendant between September 28 and October 4, 1976, and informed it that he wished to pay off the indebtedness. According to Hemken, he was told that the tractor had been sold. However, defendant's records indicate that the tractor was not sold until October 15, 1976.

When he was contacted by the plaintiff, Harry Kennedy testified that he responded that he would take care of whatever was necessary. If the plaintiff had been able to get possession of the truck, there was no question that Kennedy would have provided the requisite amount of money. He knew that the balance on the contract was approximately $7,100 and he said he would have been willing to loan that amount to Hemken if it were necessary.

In an attempt to show the damages suffered by the plaintiff as a result of the repossession sale, he introduced an equipment lease between Willard Hemken and Curry Ice and Coal, Inc. Hemken, who hauled pursuant to this lease from August 1975 until August 1976, would receive the sum of 85% of the gross weekly income. Trip tickets which showed Hemken's income from the lease were also introduced into evidence. However, Hemken was required to pay the costs of fuel, upkeep, and repairs on the vehicle, and when his counsel asked for the average of these expenses, defendant's objection to the question was sustained.

■■ After considering this evidence, the trial court granted the defendant's motion for judgment. In ruling on a motion for a directed verdict at the close of the plaintiff's case in a bench trial, the court is to weigh the evidence and pass on the credibility of the witness. The court should consider the weight and quality of all the evidence, including that which is favorable to the defendant. And the trial court's decision will not be reversed unless it is contrary to the manifest weight of the evidence. *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399.

The actions of a secured party in defendant's situation are governed by article 9 of the Uniform Commercial Code. Absent certain enumerated circumstances, section 9—504 of the Code requires a repossessing secured party to give the debtor reasonable notification of the intended sale or disposition of the repossessed collateral. (Ill. Rev.

Stat. 1977, ch. 26, par. 9—504.) This requirement is necessary to protect the debtor's right to redeem the collateral by tendering fulfillment of all obligations prior to the secured party's disposition of the collateral in a commercially reasonable manner. (Ill. Rev. Stat. 1977, ch. 26, pars. 9—504, 9—506.) Here, no argument is presented which would suggest that any of the enumerated exceptions to the general rule apply. Consequently, notice should have been given.

When a secured party has failed to proceed in accordance with the Code provisions regulating disposition of repossessed collateral, the debtor may recover *any* loss caused by the failure. (Ill. Rev. Stat. 1977, ch. 26, par. 9—507.) Although the trial court found that the defendant had breached its duty to give notice, it nevertheless denied plaintiff's claim for damages. The court gave these reasons for this ruling: (1) Plaintiff's failure to show a sale substantially below fair market value; (2) his failure to prove the cost of fuel, maintenance and repairs; and (3) his failure to show that he was ready, willing and able to perform. We disagree with this reasoning.

Plaintiff initially contends that the trial court erred in finding that the sale was not substantially below the actual fair market value of the tractor. Apparently this ruling was a determination that the sale was commercially reasonable. Plaintiff argues that the evidence shows that defendant wholesaled this tractor and did not attempt to sell it for its fair market value. He introduced a record of the defendant which indicates that a profit of $371.84 was realized on this sale. Adding this amount to the difference between the wholesale figure of $7,150 and the retail value of $7,500, plaintiff arrives at a sum of $721.74, which he contends is a *substantial amount.*

The evidence in this case—contrary to plaintiff's assertions—supports a conclusion that the price for which the tractor was sold was commercially reasonable. The only evidence of value came from Jesse Werner, president of the defendant company. He testified that the retail value of this tractor was approximately $7,500 but this would include the salesman's commission of $400. Plaintiff's argument concerning the profit realized by the defendant is without explanation in the record and none has been offered by the parties on appeal. In this situation we cannot say that the price for which the tractor was sold was unreasonable.

Although plaintiff may have failed to show that the price for which the tractor was sold was commercially unreasonable, the question of liability of the defendant is still unresolved. Article 9 of the Uniform Commercial Code creates a procedure which allows a secured party to dispose of repossessed collateral. To avoid liability, the secured party's right to sell must be exercised in compliance with the Code's procedure:

STEP ONE of the process requires the secured party to give reasonable notice of the intended sale to the debtor.

STEP TWO mandates that the sale then be conducted in a commercially reasonable manner which includes method, manner, time, place, and terms.

■■ Failure to take *either* of the required steps subjects the secured party to liability for any damages incurred by the debtor as a result of the omission. *Tauber v. Johnson* (1972), 8 Ill. App. 3d 789, 291 N.E.2d 180; *Morris Plan Co. v. Johnson* (1971), 133 Ill. App. 2d 717, 271 N.E.2d 404.

Here, defendant omitted step one and is liable for the consequent harm.

Since we resolve the question of liability in favor of the plaintiff, we next must turn to the trial court's ruling in regard to the failure to prove the cost of fuel, maintenance and repairs. Plaintiff argues that the trial court erred when it sustained defendant's objection to counsel's question concerning the average cost of operating the tractor. We agree.

■■ Where lost profits are sought to be recovered as damages, the recovery is to be based upon the net profit. Net profits are determined by computing the difference between the gross profits and the expenses that would be incurred in acquiring such profits. While these damages may not be speculative, they need not be proved to a mathematical certainty. The plaintiff is only required to show a reasonable basis for their computation. *Eastman Kodak Co. v. Southern Photo Materials Co.* (1927), 273 U.S. 359, 71 L. Ed. 684, 47 S. Ct. 400.

■■ Defendant, of course, is correct in arguing that without proof of the expenses incurred in operating the truck the plaintiff could not have presented sufficient evidence to present a reasonable basis for computation of net profits. However, plaintiff was *precluded* from introducing this type of evidence, and error occurred when the testimony was excluded. If proof of the operating cost had been admitted, the problem confronting the trial court on the computation of damages would have been eliminated. The court would then have been able to determine the amount of loss between the time Hemken was able to redeem and the time reasonably required to obtain a replacement vehicle.

Finally, Hemken contends that the evidence adduced at trial showed that he was ready, willing and able to redeem the repossessed tractor. He argues that the trial court's finding to the contrary is error. We agree. Such finding was against the manifest weight of the evidence.

■■ Section 9—506 of the Uniform Commercial Code gives a debtor in default an opportunity to redeem by tendering fulfillment of all obligations. (Ill. Rev. Stat. 1977, ch. 26, par. 9—506.) The defendant argues that since no actual tender was made there was no duty to delay

the sale of the repossessed merchandise. Such an interpretation does violence to the provisions of the Code. A secured party does not have an *unrestricted* right to sell repossessed collateral. In situations such as the one at bench the secured party must give notice and conduct the sale in a commercially reasonable manner. (Ill. Rev. Stat. 1977, ch. 26, par. 9—504.) The debtor's right to redeem may be exercised anytime prior to the disposition of the collateral by the secured party in compliance with section 9—504. That has not occurred in this case and the defendant breached a duty which it owed to the plaintiff. Defendant's argument would require *tender prior to* the duty to give *notice*—clearly contrary to the procedure which has been adopted by our legislature.

(A separate reason for rejecting the court's ruling on this issue comes from our review of the testimony of plaintiff Willard Hemken and that of Harry Kennedy. Their testimony showed that between September 28 and October 4, 1976, they were informed by the defendant that the tractor had already been sold. At this time, Kennedy had agreed to loan Hemken whatever amount was needed to redeem. Kennedy also testified that the money required for this transaction was available. Thus, the only evidence in this record shows that plaintiff was ready, willing and able to perform. Any tender after the tractor had been sold would be a useless effort not required to preserve the rights granted the debtor by article 9 of the Uniform Commercial Code.)

The ultimate issue raised in this appeal concerns defendant's argument that this case is controlled by section 20 of the Motor Vehicle Retail Installment Sales Act. (Ill. Rev. Stat. 1977, ch. 121½, par. 580.) This position was correctly rejected by the trial court. The Motor Vehicle Retail Installment Sales Act applies to "retail installment transactions" which require the presence of a "retail buyer." The definition of a retail buyer specifically *excludes* a person who buys a motor vehicle for *use in business*. (Ill. Rev. Stat. 1977, ch. 121½, par. 562.2.) All the evidence in this case clearly demonstrates that this truck was to be used in Hemken's business, and the Act would therefore not be applicable.

Reversed and remanded.

GREEN and TRAPP, JJ., concur.