THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID KNOWLES, Defendant-Appellant.

Fourth District No. 16268

Opinion filed December 30, 1980.

538

GREEN, J., concurring in part and dissenting in part.

Harold M. Jennings, of Bloomington, for appellant.

Richard M. Baner, State's Attorney, of Eureka (Gary J. Anderson and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendant was charged with arson in October 1975, for fires he started at two student dormitories, DeWeese and Ford halls, on the Eureka College campus; the defendant was then a student at the school. For the fire at Ford Hall the defendant was convicted of arson to personal property and acquitted of arson to the building. This court affirmed the conviction but remanded for resentencing (*People v. Knowles* (1977), 49 Ill. App. 3d 1131, 368 N.E.2d 232 (Rule 23 order)), and the defendant was later sentenced to 4 months in jail and 3 years' probation.

This appeal stems from the fire at DeWeese Hall. In *People v. Knowles* (1979), 70 Ill. App. 3d 30, 388 N.E.2d 261, we affirmed the defendant's convictions for arson to personal and real property in the DeWeese Hall fire but vacated the 2- to 12-year prison sentence and remanded for resentencing. The trial court then sentenced the defendant to 5 years' probation and ordered him to pay restitution of $69,387.94, divided into 59 monthly installments of $1,176.07, beginning April 1, 1980.

On appeal the defendant argues that the total amount of restitution order is excessive and attacks specific components of the amount.

Because the defendant chose to be sentenced under prior law, the provision on restitution in effect at the time of the offense governs. (Ill. Rev. Stat. 1979, ch. 38, par. 1008—2—4(b).) The former section of the Unified Code of Corrections listing the permissible conditions of probation says that the sentencing judge may order a defendant to "make restitution or reparation in an amount not to exceed actual loss or damage

to property and pecuniary loss." Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—3(b)(10).

At a hearing devoted to determining the appropriate amount of restitution, the State introduced evidence supporting the various elements composing the restitutionary order. Payments by three insurers handling DeWeese Hall totaled $48,890.94; the deductible in the college's insurance policy was $5,000. The college lost $6,725 from being unable to rent rooms in DeWeese Hall for the remainder of the academic year. Residents of the dormitory reported losses of approximately $9,000 from the fire.

■■ We agree with *People v. Wilson* (1980), 87 Ill. App. 3d 544, 408 N.E.2d 1209, that amounts received by victims of crimes from collateral sources need not be excluded in computing the proper amount of restitution. The provision applicable here refers to "actual loss or damage to property and pecuniary loss." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—3(b)(10).) Damage to DeWeese Hall reached $53,890.94. A representative of the college testified to the receipt of the insurance payments. Insurance payments and the deductible may therefore be entertained as proper elements of a restitutionary order.

■■ The evidence showing the college's lost rental income is based on the number of rooms, of different sizes and different rates, rented in advance at DeWeese Hall for the 1975-76 academic year. The total, $6,725, is gross rather than net, however; it is not reduced by any expenses involved in maintaining and operating the dormitory. The gross loss does not truly reflect the college's pecuniary loss. By analogy, lost profits are compensable in civil actions if shown by clear evidence rather than speculation (*Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 315 N.E.2d 215); the amount recoverable is the net loss (*Hemken v. First National Bank* (1979), 76 Ill. App. 3d 23, 394 N.E.2d 868).

■■ ■ Including in the order of restitution amounts lost by certain residents of DeWeese Hall was improper. The defendant was not charged with damaging the students' property; the information charging the offense referred to property owned by the college only. Ownership is an element of arson:

> "A person commits arson when, by means of fire or explosive, he knowingly;
>
> (a) Damages any real property, or any personal property having a value of $150 or more, of another without his consent.
> * * *
>
> Property 'of another' means a building or other property, whether real or personal, in which a person other than the offender has an interest which the offender has no authority to defeat or impair." (Ill. Rev. Stat. 1975 and 1979, ch. 38, par. 20—1.)

Although the State need not prove the identity of the owner whose property is damaged, the State must show that someone other than the defendant owns or has an interest in the property. (*People v. Rawls* (1978), 57 Ill. App. 3d 702, 373 N.E.2d 742.) In this case the information charging the offense did not allege that the fire damaged any property other than that owned by the college. The trial court's consideration of the residents' statements of loss was therefore incorrect. *People v. Mahle* (1974), 57 Ill. 2d 279, 312 N.E.2d 267.

Rather than remanding this cause for a reevaluation of the college's lost rental income and prolonging this already long litigation, we will go ahead and reduce the order of restitution to a more appropriate amount. The evidence at the hearing disclosed that the defendant served 128 days in jail and prison before being released on bond for the first appeal in this cause. He has lived at his parents' home in Brooklyn, New York, since his release from custody May 9, 1978. He has not been arrested or charged with any crime or traffic offense since then. The defendant began working fulltime October 23, 1978, as a clerk with a law firm in New York City; he serves and files papers and does general clerical work in the office. He grosses $125 and nets about $95 weekly from this job. The defendant also sometimes works Saturdays for the New York Daily News, where he earns $50. The defendant's weekly expenses for transportation and lunch are $22, and he pays his parents $20 weekly for living expenses. The defendant is repaying his parents between $10,000 and $15,000 for legal fees and travel costs incurred in defending and appealing the two convictions. According to the defendant's W-2 form, he grossed $6,570.93 during 1979. The defendant simply will not be able to pay restitution of over $1,000 each month for 59 months.

■■ Restitution is intended to provide compensation to the victims of crime while a defendant is on probation and able to work or to seek work. Although the provision (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—3(b)(10)) does not condition restitution on a defendant's ability to pay, amounts ordered must be "reasonable and just." (*People v. Tidwell* (1975), 33 Ill. App. 3d 232, 238, 338 N.E.2d 113, 118.) This purpose is frustrated when the restitutionary order imposes an impossible financial burden. Although the trial judge instructed the defendant to pay as much as possible and to enclose an explanatory note when a month's check fell short of the amount required, the inevitable problems, such as revocation for non-payment, are better avoided than invited.

We note the substantial amount of pending civil litigation concerning the two fires. That litigation continues unabated.

■■ An order of restitution based on a percentage of the defendant's net income rather than a fixed amount is the appropriate device here. A percentage is self-adjusting and will reflect changes in the defendant's

income without requiring motions and hearings to modify the amount should the defendant's income change appreciably. *In re Marriage of Stegbauer* (1980), 84 Ill. App. 3d 83, 404 N.E.2d 1140.

■■ We therefore alter the amount of restitution to 10 percent of the defendant's net income for a five-year period, payable monthly. This amount is payable to the college rather than to residents of the dorm or to insurers. Finally, the limit on the amount is $53,890.94, reflecting the amount of damage to the dormitory, and excluding lost rental income. Should the defendant pay this amount before the end of five years, his liability will then be at an end. Any deficiency remaining after five years is not to be assessed against the defendant in any further criminal proceedings.

Affirmed as modified and remanded for the issuance of new restitution terms as herein provided.

TRAPP, P. J., concurs.

Mr. JUSTICE GREEN, concurring in part and dissenting in part:

When monetary losses resulting from crime reach the magnitude involved here, the task of setting forth a fair and workable procedure by which the criminal is required to make restitution is almost impossible. I consider the trial judge to have made a good attempt to do so here. However, I share the thought, implied in the majority opinion, that this can only be handled satisfactorily in civil proceedings.

I concur in the majority's decision (1) to affirm the portion of the judgment of sentence requiring the defendant to make restitution, and (2) to modify the amount of periodic payments required to 10 percent of . defendant's income for that period. I consider the trial judge's order that defendant pay a stated sum with the understanding that he would not be sanctioned as long as he paid as much as he could to have been fair but agree with the majority that endless dispute was the likely result of such a procedure.

I do not agree that the portion of the restitution order requiring reimbursement to the residents of DeWeese Hall whose property was burned was erroneous.

In *Mahle*, a defendant was convicted of several counts charging deceptive practices whereby he had wrongfully obtained $387. He was placed on probation conditioned upon his making restitution not only for the $387 but also for other sums he was stated to have obtained by issuing other fraudulent checks. The supreme court held the requirement that the defendant make restitution for the additional checks issued to have been erroneous. The court described the sums involved in the additional checks

as being "unrelated" and "extraneous" to the charges before the trial court. (57 Ill. 2d 279, 284, 312 N.E.2d 267, 271.) The *Mahle* situation would be similar to the situation here if the trial court had also ordered defendant to make restitution for the damages incurred at Ford Hall.

Here, the damage to the residents of DeWeese Hall resulted from the very conduct set forth in the charges. Thus, the sums defendant was ordered to pay to these students was related and not extraneous to these charges. Notably, the *Mahle* court did not say that the restitution ordered must be to a victim named in the charges nor did that court say that the restitution had to be for damage to property described in the charges. The connection between the charges and the injury for which restitution was ordered was sufficient here.

Accordingly, I dissent from the modification of the portion of the judgment setting forth the amount of restitution to be paid and the persons to whom it was to be paid.