[No. 18435-4-II. Division Two. May 31, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. T.R. KISOR, *Appellant*.

*R.A. Lewis* and *Knapp, O'Dell & Lewis*, for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney*, and *Michael C. Kinnie, Deputy*, for respondent.

SEINFELD, CJ — T. R. Kisor was convicted of killing Lucky, a trained police dog.[1] Lucky was the property of the Clark County Sheriff's department; Officer Thomas

[1] A "[p]olice dog" is "a dog used by a law enforcement agency specially trained for law enforcement work and under the control of a dog handler." RCW 4.24.410(1)(a).

Mitchum was Lucky's "dog handler."[2] Following a restitution hearing, the trial court ordered Kisor to pay $14,419.29 to Clark County and $5,092.50 to Officer Mitchum. Kisor appeals the restitution order, contending that RCW 9.94A.142, the restitution statute, does not authorize the award. He also seeks a $15,000 offset for the private donations Clark County received to replace Lucky.

We conclude that the award to Clark County properly represents the cost to replace a fully trained police dog and, thus, is authorized by statute. The loss to Officer Mitchum of his personal time involved in training a replacement dog, however, is not compensable under the statute. We also conclude that Kisor is not entitled to benefit from the private donations to Clark County. Thus, we affirm in part and reverse in part.

## FACTS

In May 1990, Kisor shot and killed Lucky.[3] As part of his responsibilities, Officer Mitchum had provided 24–hour care and housing for Lucky. The day after Lucky died, Officer Mitchum began the search for another dog with "qualities that would make him available as a beginning prospect to become a police service dog." Eventually, he located Lazer, a two–year–old German Shepherd. Lazer's owners donated Lazer to Clark County in June, 1990.

Although Lazer had the basic qualities required for police work, he was a "green dog," meaning that he had not been trained with a handler. Thus, Officer Mitchum needed to train Lazer before he would be an effective replacement for Lucky. From June through September 1990, Officer Mitchum worked with Lazer, teaching him "[o]bedience, bite work, socialization, obstacle courses"

---

[2] A "[d]og handler" is "a law enforcement officer who has successfully completed training as prescribed by the Washington state criminal justice training commission in police dog handling." RCW 4.24.410(1)(c).

[3] See State v. Kisor, 68 Wn. App. 610, 615–16, 844 P.2d 1038, review denied, 121 Wn.2d 1023 (1993).

and other basic matters. Officer Mitchum testified that he was involved with this initial training "24 hours a day" or 2,352 hours over 98 days. Clark County did not compensate Officer Mitchum for his off-duty time.

Lazer then entered the next phase of his training — attendance with Officer Mitchum at police dog training school in Tacoma. The course ran for 14 weeks in the fall of 1990 and involved 560 hours of training. Officer Mitchum's lodging and meal costs were $2,866.89. The County also paid Officer Mitchum his hourly wage of $16.97 per hour, 40 hours per week, for a total of $9,516.

Officer Mitchum used his police vehicle while searching for a replacement dog and during the training course in Tacoma. Clark County calculated the vehicle costs at $2,036.40, 15 percent of Officer Mitchum's total 1990 vehicle expenses. Officer Mitchum testified that his actual mileage during the 14-week course was 7,884 miles. In 1990, the County rented Officer Mitchum's vehicle for $0.31 per mile, or $2,444 for the 14-week period.

As a result of news about Lucky's death, Clark County received approximately $15,000 in private donations to the Sheriff's Dog Fund. The contributions were "intended to replace Deputy K9 'LUCKY.' "

Following a restitution hearing, the trial court awarded Clark County $9,516.00 for Officer Mitchum's salary, $2,866.89 for Officer Mitchum's room and board in Tacoma, and $2,036.40 for transportation costs, for a total of $14,419.29. It also awarded Officer Mitchum $5,092.50 for his off-duty work with Lazer, calculated by multiplying his $16.97 hourly pay rate times 300 hours.

On appeal, Kisor argues that RCW 9.94A.142 does not authorize any of the items included in the award other than Officer Mitchum's room and board in Tacoma. Kisor also seeks to set-off the $15,000 Clark County received as private donations.

I

The authority to order restitution is purely statu-

tory. *State v. Smith*, 119 Wn.2d 385, 389, 831 P.2d 1082 (1992); *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). The restitution statute under which the trial court sentenced Kisor authorizes restitution for four different types of injury, as indicated by the bracketed numbers inserted below:

> Restitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for [1] injury to or loss of property, [2] actual expenses incurred for treatment for injury to persons, and [3] lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses, but may include the [4] costs of counseling reasonably related to the offense. The amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime. . . .

RCW 9.94A.142;[4] *State v. Martinez*, 78 Wn. App. 870, 882, 899 P.2d 1302 (1995), *review denied*, 128 Wn.2d 1017 (1996).

█ A "[v]ictim" is "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." RCW 9.94A.030(37). An entity need not be the immediate victim of the defendant's crime to fall within the statutory definition. *Davison*, 116 Wn.2d at 921. Restitution is appropriate if the damages are foreseeable and there is a causal connection between the defendant's crime and the injuries for which compensation is sought. *State v. Awawdeh*, 72 Wn. App. 373, 378, 864 P.2d 965, *review denied*, 124 Wn.2d 1004, *cert. denied*, 115 S. Ct. 441 (1994); *State v. Johnson*, 69 Wn. App. 189, 191, 847 P.2d 960 (1993).

### A. Award to Clark County

██ Clark County claimed the loss of property, specifically of Lucky, a fully trained police dog. RCW 9.94A.142

---

[4]The Legislature amended RCW 9.94A.142 in 1994, LAWS OF 1994, ch. 271, § 602, and 1995, LAWS OF 1995, ch. 33, § 4; LAWS OF 1995, ch. 231, § 2. The quoted language has not changed.

clearly covers this type of injury. To determine the amount of Clark County's damages, the trial court relied on the cost of replacing a fully trained police dog. A functioning police dog must not only know how to behave and respond to commands, it must also have a relationship with and be "under the control of a dog handler." RCW 4.24.410(1)(a). Thus, it is a unique item of property that must be individually formed through training. Training a replacement police dog necessarily involves a law enforcement officer who will act as the dog's handler. RCW 4.24.410(1)(c).

Kisor does not contest the trial court's method in valuing Lucky insofar as it includes the County's actual food and lodging expenses in sending Officer Mitchum and Lazer to the Tacoma training school. Kisor contends, however, that the inclusion of Officer Mitchum's wages was error because those wages do not fit within the statutory definition of "lost wages resulting from injury." RCW 9.94A.142. He also argues that the County did not lose Officer Mitchum's wages because the County had an obligation to pay Officer Mitchum whether or not he attended the training school with Lazer.

Kisor's first contention misstates the basis for the award. The fact that the County lost the benefit of Officer Mitchum's wages was not due to officer injury. Rather, the trial court considered Officer Mitchum's wages as a component of "damages for injury to or loss of property". RCW 9.94A.142. For Clark County to acquire a replacement police dog, it was necessary for Officer Mitchum or another officer on the force to devote extensive time providing basic training at home and working with the new dog at the training school.

The costs related to replacing lost property are compensable under RCW 9.94A.142. See Smith, 119 Wn.2d 385. In Smith, the defendant robbed a bank. As a result, the bank incurred expense in developing film and reloading surveillance cameras. The Supreme Court affirmed the restitution award to the bank for these amounts, holding that the funds spent by the bank were "property" that was lost as a direct result of the crime. Smith, 119 Wn.2d at 390.

Although Clark County owed Officer Mitchum his wages whether or not the officer was training Lazer, the County lost the officer's services during the time he was involved with dog training. But for the death of Lucky, Officer Mitchum would have been available to assume other responsibilities in Clark County. Thus, in effect, Clark County lost the benefit of the wages it paid the officer. This is a proper consideration in awarding restitution. *See Davison*, 116 Wn.2d 917.

The *Davison* court approved a restitution order awarding the City of Seattle the amount of wages it paid a firefighter during the time the officer, a victim of the defendant's assault, was unable to work, stating: "The funds paid by the City for the victim's wages were its property. Because of the assault the City was deprived of the services of its employee, the assault victim." *Davison*, 116 Wn.2d at 921. As Officer Mitchum's wages were causally linked to Lucky's replacement value, the trial court did not err in including this item.

Kisor also challenges the award for vehicle expenses, again contending that this item was not causally linked to Lucky's death but was instead a necessary County expense related to Officer Mitchum's employment. The analysis we applied to the challenge to Officer Mitchum's wages is applicable here also. The County lost its use of the vehicle during the time it was in Tacoma for training. Those vehicle costs were a necessary component of the total cost of replacing Lucky.

■■ Kisor also contends that Officer Mitchum's vehicle expenses were not sufficiently proven as an element of lost property. Restitution must be based upon easily ascertainable damages, but a loss need not be established with specific accuracy. *State v. Fleming*, 75 Wn. App. 270, 274, 877 P.2d 243 (1994). " 'Evidence of damage is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.' " *Fleming*, 75 Wn. App. at 274–75 (quoting *State v. Pollard*, 66 Wn. App. 779, 785, 834 P.2d 51, *review*

*denied*, 120 Wn.2d 1015 (1992) (quoting *State v. Mark*, 36 Wn. App. 428, 434, 675 P.2d 1250 (1984) (citing *State v. Bush*, 34 Wn. App. 121, 124, 659 P.2d 1127, *review denied*, 99 Wn.2d 1017 (1983))). When a particular type of restitution in question is authorized by statute, imposition of restitution is generally within the discretion of the trial court. *Davison*, 116 Wn.2d at 919.

In this case, the record supports the $2,036.40 award for vehicle expenses. The police car was involved with training for 14 weeks, 27 percent of a year. The trial court awarded the County only 15 percent of the annual vehicle cost. Faced with these figures, we cannot say that the award lacks justification. Further, Officer Mitchum's actual mileage during the 14-week training school program was 7,884 miles. In 1990, the County paid $0.31 per mile, or $2,444, to rent the vehicle. Either basis supports the court's $2,036.40 award.

## B. Award To Officer Mitchum

Kisor also challenges the award to Officer Mitchum for 300 hours of off-duty time dedicated to training Lazer. Although we recognize that due to the close trainer-dog relationship, Lucky's death may have caused Officer Mitchum a significant sense of personal loss, the restitution statute does not authorize this award.

A restitution recipient must be a "victim". The statute defines victim as a "person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." RCW 9.94A.030(37). As Officer Mitchum did not claim a compensable injury, i.e. emotional or psychological harm for which he incurred counseling costs, or physical harm for which he incurred treatment expenses or lost wages, he is not a statutory victim.

Further, because Officer Mitchum was not Lucky's owner, he did not suffer a direct property loss upon Lucky's death. He did lose personal time training Lazer

"above and beyond any routine or ongoing training with the previously trained and certified dog." But there is no evidence that Officer Mitchum's off–duty time had an easily ascertainable value, or that had he not used this time to train Lazer, he would have earned this sum in an alternate activity. Thus, based on this record, we find no basis to conclude that Officer Mitchum's off–duty time was compensable property. Consequently, we must reverse this portion of the trial court's restitution order.

## II

Kisor argues that any restitution he owes to the County should be reduced by the amount of donations the County received from private individuals. He argues that as a result of the donations, the County did not suffer any actual loss.

■ Like the trial court, we analogize the donations received by Clark County to benefits received from a collateral source in a civil case. Under the collateral source rule, the court will not consider payments received by the injured party from sources other than the tort–feasor or party in breach of contract to reduce damages otherwise recoverable. *Wheeler v. Catholic Archdiocese*, 124 Wn.2d 634, 640, 880 P.2d 29 (1994); *Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 523, 844 P.2d 389 (1993); *Ciminski v. SCI Corp.*, 90 Wn.2d 802, 804, 585 P.2d 1182 (1978). The rationale behind the rule is that "in a collateral payment situation, the receipt of a windfall by one party or the other is unavoidable, and that, as between an injured plaintiff and a defendant–wrongdoer, the plaintiff is the appropriate one to receive the windfall." *Xieng*, 120 Wn.2d at 523; *Ciminski*, 90 Wn.2d at 805–06.

■ This rationale is equally compelling in the criminal context and is consistent with the "legislative intent to grant broad powers of restitution." *Davison*, 116 Wn.2d at 920. As the court in *Davison* explained:

Our interpretation of the statutes requires the defendant to

face the consequences of his criminal conduct. We interpret the statute to carry out its purposes to "[p]romote respect for the law by providing punishment which is just." RCW 9.94A.010(2). We will not give the statutes an overly technical construction which would permit the defendant to escape· from just punishment.

*Davison*, 116 Wn.2d at 922. To allow Kisor to receive a windfall because numerous caring residents of Clark County voluntarily donated funds to replace Lucky would not only be inappropriate, it would interfere with the need for Kisor to face the financial consequences of his criminal conduct and would create disrespect, rather than respect for the law. Thus, we reject Kisor's overly technical construction of RCW 9.94A.142.

We affirm the award of restitution to Clark County, reverse the award to Officer Mitchum, and remand the matter to Clark County for further proceedings consistent with this decision.

MORGAN and BRIDGEWATER, JJ., concur.

Review denied at 130 Wn.2d 1011 (1996).