# State of Vermont v. Norman F. May

[689 A.2d 1075]

No. 95-435

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 6, 1996

*Pamela Hall Johnson*, Chittenden County Deputy State's Attorney, and *Frank D. Molander*, Legal Intern, Burlington, for Plaintiff-Appellee.

*Robert W. Katims* of *Hoff, Curtis, Pacht, Cassidy & Frame, P.C.,* Burlington, for Defendant-Appellant.

**Johnson, J.** Defendant, who was convicted of possession of stolen property, appeals the district court's restitution award for the victim's lost profits. Apart from the insurance deductible, we strike the award on the ground that it was not proved with reasonable certainty.

In July 1994, computer equipment valued at approximately $17,000 was stolen from a printing business. In May 1995, defendant pled no contest to possession of stolen property based on his possession of the equipment from September to November 1994. He was sentenced to

a one-to-three-year suspended sentence, with special probation conditions requiring him to pay a fine of $1000 and setting a restitution hearing.

At the restitution hearing, the printing business's general manager testified as follows: (1) the business had to pay its graphic artist $10 per hour for 343.5 hours spent reentering information into the computer purchased to replace the stolen one; (2) the graphic artist was not available to work on other projects during those hours, resulting in lost profits of $3435, $10 for each of the 343.5 hours; (3) the business's insurance company reimbursed the business $10 per hour for the graphic artist's time, but not $10 per hour for the projected lost profits; (4) the business lost $10 per hour in profits for each of the 120 hours that the printing presses stood idle because project information had not yet been entered into the new computers; (5) the insurance company reimbursed the business $10 per hour for the press downtime, but not $10 per hour for the projected lost profits; (6) the business lost profits on three projects worth $5406 when the customers had the work done with other printers because of delays due to the theft; (7) the business had to discount one large project $3200 because of delays due to the theft; (8) the business spent $388 for a new security system; (9) the general manager spent twenty hours of his time, valued at $20 per hour, working with police gathering evidence and following up on leads; (10) the insurance company reimbursed the business approximately $24,000 for its losses, leaving outstanding losses of just over $13,000, mostly for lost profits; (11) the insurance deductible was $250.

The district court awarded the business (1) $3435 in lost profits associated with the graphic artist's time; (2) $1200 for lost profits associated with press downtime; (3) $2027 in lost profits associated with the three customers who took their projects to other printers; (4) $1200 in lost profits associated with the discounted project; and (5) $250 for the insurance deductible. The court refused to award restitution for the security system or for the time the general manager spent investigating the theft. On appeal, defendant argues that (1) the court exceeded its authority under the restitution statute by awarding unliquidated sums not easily ascertainable, and (2) the restitution order does not relate to the offense for which defendant was convicted.

"Restitution shall be considered in every case in which a victim of a crime has suffered a material loss or has incurred medical expenses." 13 V.S.A. § 7043(a). Restitution may include, among other

things, cash compensation for damages to the victim's property. *Id.* § 7043(b)(2). In *State v. Jarvis*, 146 Vt. 636, 638-39, 509 A.2d 1005, 1006 (1986), where we held that restitution damages could not include compensation for pain and suffering, we construed § 7043 as follows:

> [O]nly liquidated amounts which are easily ascertained and measured are recoverable under the legislative scheme. These amounts include, but are not necessarily limited to, hospital bills, property value, and *lost employment income.* . . . Damages that are not readily ascertainable, such as pain and suffering, emotional trauma, *loss of earning capacity*, and wrongful death awards are not proper subjects of restitution.

(Emphasis added.)

Aware of this holding, the State strives to fit the instant award within the term "lost employment income," and defendant argues with equal vigor that the award should be considered "loss of earning capacity." Neither party is correct. The district court did not reimburse the printing business either for its lost earnings or for its diminished capacity to obtain future earnings; rather, the award, as recognized by all concerned at the restitution hearing, was for lost profits and opportunities, a category of damages that does not fit neatly within either of the terms used in *Jarvis*.

Lost earnings or lost employment income, which usually refers to loss of wages due to an inability to perform a specific job, is generally easily ascertainable, while loss of earning capacity, which refers to diminished future capacity to earn a livelihood, is not. See *Border Apparel-East, Inc. v. Guadian*, 868 S.W.2d 894, 897 (Tex. Ct. App. 1993). Lost profits, on the other hand, may or may not be easily ascertainable, and thus proof of actual loss is crucial. See *D.L. Development, Inc. v. Nance*, 894 S.W.2d 258, 261 (Mo. Ct. App. 1995) (anticipated profits of established business are recoverable only when they are made reasonably certain by proof of actual facts, with present data for rational estimate of amount); *Starnes v. First American Nat'l Bank*, 723 S.W.2d 113, 119 (Tenn. Ct. App. 1986) (loss of profits is recognized as item of damages depending on nature and extent of proof involved).

Accordingly, lost profits may be awarded as restitution damages. The key inquiry in the recovery of lost profits remains whether the damages can be easily ascertained and measured; mathematical certainty is not required, but there must be a reasonable basis for

estimating the loss. *State v. Kisor*, 916 P.2d 978, 981 (Wash. Ct. App. 1996) (restitution damages are easily ascertainable if evidence affords reasonable basis for estimating loss and does not subject trier of fact to mere speculation and conjecture); see *State v. Ihde*, 532 N.W.2d 827, 830 (Iowa Ct. App. 1995) (as in tort actions, courts should deny lost profits as restitution in criminal actions only when loss is speculative, contingent, conjectural, or uncertain); *People v. Knowles*, 414 N.E.2d 1322, 1324-25 (Ill. App. Ct. 1980) (as in civil actions, lost profits may be awarded as restitution in criminal actions if shown by clear evidence rather than speculation); *State v. Jurado*, 905 P.2d 274, 275 (Or. Ct. App. 1995) (as in civil action, lost profits may be awarded as restitution in criminal action if proved with reasonable certainty).

The State argues that each component of the instant award is readily ascertainable because we need only multiply (1) 343.5 hours of graphic artist time by $10 per hour in lost profits, (2) 120 hours of press downtime by $10 per hour in lost profits, and (3) $8606 of lost or discounted projects by .375 — the profit fraction expected from each project. This reasoning falls apart when one considers the uncertainty of the numbers supplied and calculated. At the restitution hearing, no accounting data was admitted as an exhibit to demonstrate the basis for the general manager's estimate of the business's lost profits. Regarding the graphic artist's time, the manager did not indicate how many of the 343.5 hours would have been dedicated to other projects that the business had turned away because of the theft. Indeed, on cross-examination, the manager conceded that he had no idea how many potential customers the business had lost as a result of the theft and no idea of the value of the projects that might have been lost. Cf. *Jurado*, 905 P.2d at 275 (although restitution award for lost profits was excessive because of failure to mitigate, damages were proven with reasonable certainty by video store, which presented evidence showing daily rental value of unreturned rental equipment and percentage of days equipment would have been rented).

Further, not only did the court award the business lost profits for all of the 343.5 hours without a sufficient showing of the loss, but it awarded the business a full $10 of profit for each hour of graphic artist time and press downtime even though the manager testified that the estimated $10 in "profit" did not take into account overhead and other costs, see *Knowles*, 414 N.E.2d at 1325 (when lost profits are proved with sufficient certainty, amount recoverable is for net loss only), and even though the assistant state's attorney conceded at the hearing that the $10 in profit stemming from the loss of graphic artist time

and press downtime should be reduced by one quarter. Moreover, the manager conceded that his estimate of a 37.5% profit margin on the business's lost projects was "very rough." Indeed, it appears that the manager first considered the profit percentage at the restitution hearing in response to the court's questioning; as noted, he presented no evidence in the way of accounting records to back up his "very rough" estimate. Compare *State v. Young*, 842 P.2d 1300, 1302 (Ariz. Ct. App. 1992) (where defendant employee stole proceeds of merchandise sales from retail store, "lost profits" component of proceeds was part of "economic loss" recoverable as restitution; however, adding profit margin to cost of missing inventory would have been too speculative) with *State v. Barrett*, 864 P.2d 1078, 1080-81 (Ariz. Ct. App. 1993) (evidence was insufficient to support restitution award compensating used car dealer who claimed that temporary loss of vehicle prevented him from selling vehicle at higher price because of lowered blue book value at time of vehicle's recovery; without evidence of potential buyers, dealer's conclusory statement as to amount of lost profit could not support award).

We recognize that the district court has discretion in determining the proper amount of restitution, see *Barrett*, 864 P.2d at 1079, and that only a *reasonable* certainty of the estimated loss is required, but here the estimate of lost profits was based on speculation and conjecture; therefore, the award cannot stand. We have not, as the dissent declares, adopted a more stringent evidentiary standard for establishing a restitution award of lost profits than the law has traditionally demanded in the civil context. Indeed, the standard quoted by the dissent, which requires "sufficient data" for the factfinder to estimate the proper amount of damages with "reasonable certainty," 166 Vt. at 48, 689 A.2d at 1080, is precisely the standard we have applied here. We disagree with the dissent that the general manager's "very rough" estimate of his profit margin, made off the top of his head without any accounting data to support it, is reasonably certain. The laudatory goals of the restitution statute do not require that we abandon the rules of evidence.

Finally, because the $250 insurance deductible remains, we must address defendant's second argument. Defendant contends that because the business, according to its manager's own testimony, had already incurred all of its losses by the time he obtained possession of the stolen equipment, the restitution award does not relate to the offense for which he was convicted. We do not agree. The manager testified that the business's new computer was up and running by

*November 1994.* Further, defendant raised this argument only at the end of the restitution hearing after the testimony had been received, and he made no claim at that time that was contrary to the manager's testimony. Figuring forty-hour weeks, the 343.5 hours of graphic artist time spent in setting up the new computer would have run into September, by which time defendant was in possession of the stolen equipment. Under these circumstances, we find no error in awarding the business the $250 insurance deductible.

*Except for the $250 insurance deductible, the restitution award is stricken.*

**Dooley, J.,** concurring. I concur that we can not affirm the restitution award for most of the reasons stated in the opinion for the Court. I agree with Justice Morse, in part, that if we were to apply the standard applicable to civil damage awards, we would affirm at least part of the restitution award. Without further action from the Legislature, which I agree with Justice Morse would be desirable, I do not believe that lost profits are appropriate for restitution awards.

Both the majority and the dissent conclude that lost profits are appropriate for restitution awards, but differ on whether they could be awarded on this factual record. They both rely on cases from other states that have authorized lost-profit awards. In looking at decisions from other states, we must look carefully at the statutes on which they are based because the authorization of restitution is wholly statutory.

A good example is *State v. Ihde*, 532 N.W.2d 827, 830 (Iowa Ct. App. 1995), which upholds a restitution order that includes lost profits. The Iowa statute involved authorizes the sentencing court to order restitution for "pecuniary damages," defined to include "'all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event.'" *Id.* at 828 (quoting Iowa Code § 910.1(2) (1991)). If the Iowa statute were in effect here, I would agree with Justice Morse that some of the profits would be recoverable in a civil action and would uphold at least a portion of the restitution order. The Vermont statute is, however, unlike the Iowa statute.

Our statute requires the court to consider restitution whenever a victim suffers a material loss. 13 V.S.A. § 7043(a). The award can include a payment "to compensate for damages to the victim's property or person." *Id.* § 7043(b). Because of this sparse and narrow language, we held in *State v. Jarvis*, 146 Vt. 636, 638, 509 A.2d 1005,

1006 (1986), that "only liquidated amounts which are easily ascertained and measured are recoverable under the legislative scheme." Whatever may be included in Iowa, this authorization is too narrow for the kind of lost profits included here.

The state with criminal restitution law most similar to Vermont's is Arizona. The Arizona statute allows a restitution order to include an amount for "economic loss," to include "losses which would not have been incurred but for the offense," but not "consequential damages." Ariz. Rev. Stat. Ann. § 13-105(14) (Supp. 1996). The Arizona courts have held that a restitution order may include lost profits, only when the defendant has actually taken the profits — for example, where a store clerk embezzles sales proceeds. See *State v. Barrett*, 864 P.2d 1078, 1080 (Ariz. Ct. App. 1993) (lost-profit component of restitution award not proper where defendant stole inventory rather than cash from sales proceeds; evidence did not show causal relationship between defendant's action and victim's purported lost profits); *State v. Young*, 842 P.2d 1300, 1302 (Ariz. Ct. App. 1992) (lost-profit component of restitution award appropriate where defendant sold merchandise to customers, did not record sales, and kept proceeds; presumably defendant made sales at retail price, depriving victim of profit on each sale); cf. *State v. Pearce*, 751 P.2d 603, 605 (Ariz. Ct. App. 1988) (victim's breach of contract and lost profits were consequential damages resulting from defendant's theft, and not proper subject of restitution). I would follow the rule of the Arizona courts as long as we have the current statute.

**Morse, J.**, dissenting. In a period of otherwise increasing judicial sensitivity to the victims of crime, I believe today's decision is a setback.

In most cases, a victim's only realistic chance to recover damages is the restitution process. Hence, as the statutory scheme makes clear, restitution is a favored remedy under the law. The statute mandates that "[r]estitution *shall* be considered in *every* case in which a victim of a crime has suffered a material loss or has incurred medical expenses." 13 V.S.A. § 7043(a) (emphasis added). It further provides that "[w]hen restitution is not ordered, the court shall set forth on the record its reasons for not ordering restitution." *Id.* § 7043(f). The statute thus creates a strong presumption in favor of restitution where the victim has suffered a material loss, and demands an explanation on the record from the trial court when it is not ordered.

Nowhere does the restitution statute define the burden of proof, nor does it specifically delineate the kinds of "material loss" for which

compensation may be ordered. It refers simply to "damages to the victim's property or person." *Id.* § 7043(b)(2). In *State v. Jarvis*, 146 Vt. 636, 638, 509 A.2d 1005, 1006 (1986), however, we construed the statute to exclude restitution for a victim's pain and suffering, emotional trauma, or loss of potential earning capacity, holding that only amounts "which are easily ascertained and measured are recoverable under the legislative scheme." *Id.* Our holding, we explained, "avoid[ed] the possible constitutional problem of lack of trial by jury in assessing unliquidated damages." *Id.* at 639, 509 A.2d at 1006. Yet nothing in *Jarvis* suggests an intent to further limit the effectiveness of restitution as the Court has today.

Here we are confronted with the relatively simple question whether lost profits are compensable under § 7043. The Court correctly concludes that lost profits may be awarded as restitution damages. Implicit in this conclusion is the recognition that, as a category of damages, lost profits satisfy the criteria set forth in *Jarvis*, that is, they are generally the type of damages that may be easily ascertained and measured. *Id.* at 638-39, 509 A.2d at 1006. As the Court notes, this conclusion is consistent with recent case law across the country. See, e.g., *State v. Ihde*, 532 N.W.2d 827, 830 (Iowa Ct. App. 1995); *State v. Jurado*, 905 P.2d 274, 275 (Or. Ct. App. 1995); *State v. Kisor*, 916 P.2d 978, 981 (Wash. Ct. App. 1996).

The only question logically remaining, therefore, is whether the evidence in this case was sufficient to support the restitution award. Traditionally, to support a damage award, "all that is required is that the plaintiff furnish sufficient data that the jury may estimate the proper amount with reasonable certainty." *Green v. Stockwell*, 87 Vt. 459, 462, 89 A. 870, 871 (1914); accord *Retrovest Assocs. v. Bryant*, 153 Vt. 493, 496-97, 573 A.2d 281, 283 (1990); *Lemnah v. American Breeders Serv., Inc.*, 144 Vt. 568, 580, 482 A.2d 700, 707 (1984). In reviewing damage awards, we do not "substitute our judgment for that of the jury, nor will we substitute our discretion for the discretion of the trial court." *In re Estate of Boisvert*, 135 Vt. 69, 74, 370 A.2d 209, 212 (1977).

Assessed in light of these standards, the evidence below — while not overwhelming — was nevertheless adequate to support the judgment. The general manager of the printing company victimized by defendant testified that its graphic artist was unavailable to work on other projects for the 343.5 hours he had to spend reentering information into the computers purchased to replace the stolen one, thereby resulting in lost profits of $3,435 (based upon the manager's

estimate of a $10 profit per hour); that the business lost $10 per hour in profits for each of the 120 hours that the printing presses stood idle because project information had not yet been entered into the new computers; and that, based on a profit margin of 37.5%, the business lost $2,027 in profits associated with three projects that were lost to other printers.

If this had been a civil trial, I have no doubt that under the traditional standards of review this Court would routinely uphold the award of damages. The record contains sufficient evidence to permit a reasonable estimation of the business's lost profits. Nevertheless, the Court concludes the evidence was inadequate, apparently because the State adduced no corroborating evidence of the business's profit margin. Yet, the manager's testimony was subject to cross-examination and rebuttal, and was largely undisputed. The Court also faults the State for failing to prove precisely "how many potential customers the business had lost as the result of the theft." 166 Vt. at 44, 689 A.2d at 1078. Where much of the business comes from a walk-in trade, however, it is neither fair nor reasonable to demand such precise accounting. As the general manager explained, it was simply impossible to "stand out front with the graphic artist and the other employees . . . turning those customers away." An award based on the amount of employee time unavailable for other projects as a result of the theft represented a reasonable basis to estimate lost profits. See *Bryant*, 153 Vt. at 496-97, 573 A.2d at 283 ("'[D]ifficulty in computing damages does not preclude the jury from making an assessment if there is evidence from which an estimation may be made with reasonable certainty.'") (quoting *Lemnah v. American Breeders Serv.*, 144 Vt. at 580, 482 A.2d at 707). I perceive no reason, and the Court supplies none, to hold the State to a more stringent evidentiary standard in establishing a restitution award for lost profits than the law has traditionally demanded in the civil context. Nor do I perceive any reason to depart from the fundamental rule that this Court does not "substitute [its] discretion for the discretion of the trial court." *Boisvert*, 135 Vt. at 69, 370 A.2d at 212.

The inequity is compounded when we recall that the purpose of the restitution statute is to provide some measure of relief to innocent crime victims, not to punish them doubly by imposing artificially high standards of proof necessitating time-consuming and costly efforts to obtain basic compensation. Denying restitution in this case does not square with the legislative mandate to consider restitution in every case where the victim has suffered a material loss. 13 V.S.A.

§ 7043(a). Indeed, the Legislature may now represent the last best hope for relief from this and other unduly narrow readings of the restitution statute. See, e.g., *State v. Webb*, 151 Vt. 200, 559 A.2d 658 (1989) (restitution under the statute may not include payments to insurers of direct victims).