No.  3-05-0570

filed June 7, 2006.

IN THE
APPELLATE COURT OF ILLINOIS
THIRD DISTRICT

A.D. 2006

PATRICIA BENAK, MARGARET VAN ) Appeal from the Circuit Court
STEENHUYSE, SHEILA LEONHARDT ) of the 12th Judicial Circuit,
and MARY BRIDGET DUFFY, ) Will County, Illinois,
 )
      Petitioners-Appellants, )
 ) No.  04-P-295
            v. )
 )
WILLIAM DUFFY, individually )
and as Executor of the )
ESTATE OF JOHN E. DUFFY, )
DECEASED, ) Honorable
 ) Herman S. Haase,
      Respondent-Appellee. ) Judge, Presiding.

JUSTICE SLATER delivered the opinion of the court:

The petitioners, Patricia Benak, Margaret Van Steenhuyse, Sheila Leonhardt and Mary Bridget Duffy, brought an action to remove their respondent-brother, William Duffy, as executor of the estate of their father, John E. Duffy.  See 755 ILCS 5/23-2(a)(9),(10) (West 2002).  At the conclusion of the petitioners' case, the trial court entered a directed verdict in favor of the respondent.  The petitioners appeal.

On appeal, the petitioners claim that the trial court erred in: (1) relying on People v. Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991), to direct a verdict for the respondent; (2) failing to remove the respondent as executor based upon a

conflict of interest that made him incapable and unsuitable to act as executor; and (3) barring evidence that the respondent's co-executor concluded that the respondent had a conflict of interest that required him to resign.

For the following reasons, we affirm the order of the trial court directing a verdict in favor of the respondent.

## I. FACTS

The record reflects that the decedent, John E. Duffy, died on April 3, 2004. His heirs and legatees were his second spouse, Phyllis Duffy, and the seven children from his first marriage, which included the petitioners and the respondent.

Decedent's will was admitted to probate on April 14, 2004. In the will, decedent nominated his brother, Joseph Duffy, and his son, William J. Duffy, to act as co-executors of the estate.

The petitioners filed an action to remove the respondent, William J. Duffy, as executor of their father's estate. See 755 ILCS 5/23-2(a)(9),(10) (West 2002). A hearing on the petition to remove the respondent as executor was held on July 27, 2005.

At the hearing, Joseph Duffy, a retired attorney, testified that he was the decedent's brother. He was co-executor of the decedent's estate until he resigned that position in December 2004. The other co-executor of the estate was the decedent's son, William, who remained executor of the estate

after Joseph resigned.

Joseph had a close relationship with the decedent. He and the decedent talked about a financial partnership that decedent had with respondent. According to Joseph, the decedent and the respondent had an oral partnership called the Duffy Venture. The respondent invested money on decedent's behalf. The decedent told Joseph that he was very happy with the job that the respondent was doing with his finances.

At one time, decedent told Joseph that he wanted the respondent to have the whole partnership upon his death. The decedent later changed his mind and told Joseph that he wanted the respondent to have half of the partnership.

Joseph identified plaintiffs' exhibit 1 as a document dated June 23, 2004. It was an accounting of the partnership assets that the decedent's accountant, Jack Rogers, sent to Joseph. Rogers created the document because Jim Van Steenhuyse, husband of one of the petitioners, was very concerned that there could be gift tax and other estate tax problems.

Joseph asked Rogers to contact the respondent and get information from him regarding the partnership transactions over the years so that Rogers could create an accounting. After Joseph received the accounting, he gave it to one of the petitioners, Peggy Van Steenhuyse.

Joseph identified plaintiffs' exhibit 3, a document dated

3

October 6, 2003. The document was entitled "Transfer Between Fidelity Accounts." Decedent's name was at the top of the document. Respondent told Joseph that there was an effort to transfer the Fidelity account into the Duffy Venture before decedent's death. However, respondent told Joseph that the transfer was unsuccessful because the Fidelity account had some margin aspect to it. To Joseph's knowledge, decedent did not get the transfer done before his death.

Joseph then identified plaintiffs' exhibit 4 as a document signed by him and dated December 27, 2004. The document was an authorization to transfer the Fidelity account into a checking account owned by the estate. The value of the account was $694,536.82. The respondent and Joseph both signed the document. Although he had already resigned as co-executor, Fidelity would not release the assets unless Joseph signed the authorization form.

Joseph testified that the funds in the Fidelity account were needed to pay the estate taxes which were due in January 2005. When Joseph signed the document he knew that William claimed one half of the money in the Fidelity account as his own.

Joseph also referred to a Vanguard account which he believed contained about $400,0000. That account was in the name of the Duffy Venture. Half of the proceeds of the Vanguard account were used to pay estate taxes.

4

Joseph explained that exhibit number 6 was a letter dated August 16, 2004, that he wrote to the decedent's children. In the letter, Joseph proposed a settlement among the children which would allow everyone to receive money from the estate and for the estate taxes to be paid.

Joseph told the children that he thought that the respondent should resign as co-executor because he had a conflict of interest. One of the petitioners' attorneys asked Joseph to read that portion of the letter into the record. Joseph's counsel objected. Ultimately, the trial court sustained the objection on the ground that Joseph's statement in the letter was opinion testimony and that the petitioners did not disclose that Joseph would be giving opinion testimony.

On cross-examination, Joseph testified that during the time that he and the respondent served as co-executors he did not believe that either of them had committed any wrongdoing.

Jack Rogers, a certified public accountant, testified that he had prepared the decedent's income tax returns for many years. However, he did not consider himself the decedent's principal tax advisor. He advised the decedent to seek other advice in connection with his estate.

Rogers felt that the decedent had an income tax problem and an estate problem that he should have someone else review. The decedent was not well read on the subject of gift taxes. Rogers

5

was not aware of any gifts that would have given rise to a gift tax return during the decedent's lifetime when Rogers was representing him.

Rogers testified about the history of the Duffy Venture and how the profits were listed on the decedent's and the respondent's income tax returns. In 1999, the decedent told Rogers that he wanted half of the income to be listed on the respondent's tax return. Rogers told the decedent that the only way to do that would be to form a partnership with the respondent. Therefore, Rogers filed for and received a partnership number and set up a partnership called the Duffy Venture. In succeeding years, half of the income was listed on the decedent's tax return and half was listed on the respondent's return.

Rogers never discussed the terms of the partnership with the decedent. If the decedent had told Rogers that he had decided to transfer part of the capital to the respondent, Rogers would have filed gift tax returns.

After the decedent's death, Rogers responded to inquiries from Joseph regarding the decedent's estate. He tried to obtain information on the estate and on the partnership. However, his firm had no information on either because the decedent had elected to not file a partnership return as an exception to the IRS code.

Rogers identified exhibit number 1 as a document that he

6

sent to Joseph dated June 23, 2004.  It was a copy of an accounting of the partnership activity as Rogers saw it at that time.  With the respondent's help, Rogers obtained cancelled checks and was able to track all the draws in order to create the accounting.

Rogers testified that some of the work noted in the accounting later turned out to be inaccurate.  When he created the initial accounting, Rogers did not show any money belonging to the respondent.  The accounting showed the capital in the partnership owned solely by the decedent and with the profits split equally by the decedent and the respondent.  He and respondent had not yet discussed any of the capital in the Duffy Venture partnership.

Later, Rogers obtained information which led him to believe that the information he provided to Joseph earlier may have been incorrect.  Specifically, Rogers obtained the decedent's pre-nuptial agreement with his second wife.  In that agreement, fifty percent of the Duffy Venture was listed as belonging to the respondent.  Also, some accounts that were in the partnership as well as some of the accounts put into the partnership later were held in joint tenancy with the right of survivorship in the decedent and the respondent.

Rogers identified exhibit number 9, a document dated May 5, 2005.  The document was a subsequent accounting of the

7

partnership at the time of decedent's death.  This document differed from the first accounting dated June 23, 2004.

In the later accounting, Rogers showed a fifty-fifty split of the partnership assets between the decedent and the respondent.  Rogers believed that the capital in the Duffy Venture partnership was owned equally between the decedent and the respondent based upon: (1) the decedent's notation to that effect in his prenuptial agreement; and (2) the Vanguard account had been held in joint tenancy with the right of survivorship before it became a partnership account.

With respect to the Vanguard account, Rogers testified that in 1999, 2000 and 2001, three real estate investments matured which had previously been held in joint tenancy.  When the investments matured, the proceeds were placed in the partnership.  That accounted for about $700,000 of the partnership capital.

Rogers made the judgment that because those investments were already in joint tenancy with the right of survivorship, the contributions to the partnership, which was a fifty percent partnership, meant that the decedent intended it to be a fifty percent ownership.

From a pure tax standpoint, Rogers concluded that the decedent had made gifts of capital to the respondent in the years 1999 through 2003.  Therefore, he prepared gift tax returns for those years and filed them on July 5, 2005.  The decedent never

8

discussed any gifts with Rogers.

William Duffy testified that at the time of his father's death, he was a fifty percent owner in the partnership. He did not discuss receiving any gifts from his father with anyone. He received his fifty percent interest from funds that his father gave him to invest. Although he paid income tax on the gains in the account, he did not pay any taxes on the capital which he believed belonged to him. He never told anyone the terms of the oral partnership. According to William, his father was very pleased with the job that he did in investing the partnership money.

At the close of evidence, the trial court held that William had a conflict of interest as co-executor of the decedent's estate. However, the trial court held that according to In re Estate of Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991), if the conflict is approved of or created by the testator, there is no "liability" unless the petitioners can show bad faith.

The trial court held that the decedent created the conflict when he engaged in an oral partnership with the respondent and also made respondent co-executor of his estate. Since there was no showing of bad faith, the court granted the respondent's motion for a directed verdict.

II. ANALYSIS

The petitioners first argue that the trial court erred in

9

relying on In re Estate of Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991) when it directed a verdict in favor of the respondent.

Specifically, they contend that in this case, unlike in Halas: (1) the decedent did not expressly waive any conflict; (2) there was no direct proof that the terms of the oral partnership gave rise to any conflict; and (3) the decedent did not contemplate that the respondent would serve as sole executor. The petitioners also argue that even if the decedent waived any conflict under Halas, his conduct constituted such an abuse of discretion that he should be removed as executor. See In re Estate of Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991).

Where a conflict of interest is approved or created by the testator, the executor will not be held liable for his conduct unless the executor has acted dishonestly or in bad faith, or has abused his discretion. See In re Estate of Halas, 209 Ill. App. 3d 333, 345, 568 N.E.2d 170, 178 (1991). Where the will approves the conflict of interest, the burden of proof remains on the party challenging the executor's conduct. There is no presumption against the executor despite the divided loyalty. Halas, 209 Ill. App. 3d at 345, 568 N.E.2d at 178.

The trial court's ruling on a directed verdict will not be reversed unless it is against the manifest weight of the evidence. Hemken v. First National Bank, 76 Ill. App. 3d 23, 394

10

N.E.2d 868 (1979).

## A.  In re Estate of Halas

In order to fully address the petitioners' first issue we will review the case of In re Estate of Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991).

In In re Estate of Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991), the petitioner, a successor executor of the estate of George Halas, Jr., brought an action against the estate of the former executor, George Halas, Sr., alleging that Halas, Sr., breached his fiduciary duties while acting as executor of his son's estate and trustee of two testamentary trusts.  Halas, 209 Ill. App. 3d at 336, 568 N.E.2d at 173.

The complaint alleged that Halas, Sr., breached his fiduciary duties by:  (1) failing to protect the interests of the beneficiaries during the reorganization of the Chicago Bears Football Club; and (2) failing to give the beneficiaries notice of the reorganization.  Halas, 209 Ill. App. 3d at 336, 568 N.E.2d at 173.

In his will, Halas, Jr., appointed his father executor of his estate and trustee of his children's trusts.  Halas, 209 Ill. App. 3d at 337, 568 N.E.2d at 173.  Halas, Jr., gave his father the authority to invest and retain the Bears' stock and absolved him of any liability for diminution in value of the stock.  He also authorized his father to take any such action without court

11

approval and "subject to his or her duty to act fairly, his or her actions in these respects shall be binding and conclusive upon all of the beneficiaries hereunder as though no such relationship or possible conflict of interest existed." Halas, 209 Ill. App. 3d at 338-9, 568 N.E.2d at 173.

The trial court held that Halas, Sr., breached his fiduciary duty to the beneficiaries by failing to give notice of the reorganization to the guardian ad litem in violation of a court order. Halas, 209 Ill. App. 3d at 340, 568 N.E.2d at 175.

The trial court made findings of fact regarding Halas Sr.'s conflicting interests, without considering that his duty to undivided loyalty had been waived in his son's will. Halas, 209 Ill. App. 3d at 345, 568 N.E.2d at 178-79. Nevertheless, the trial court indicated that Halas Sr.'s participation in the reorganization was motivated by "benevolent intentions." Halas, 209 Ill. App. 3d 345, 568 N.E.2d at 178-79.

After a hearing, the trial court held that the petitioner failed to prove damages and therefore awarded him one dollar in nominal damages. Halas, 209 Ill. App. 3d 344, 568 N.E.2d at 177.

On review, the appellate court held that Halas, Sr., did not act in bad faith or abuse his discretion during the reorganization. Halas, 209 Ill. App. 3d 346, 568 N.E.2d at 179. In so doing, the appellate court held that Halas, Jr.'s will expressly waived the duty of undivided loyalty. Halas, 209 Ill.

12

App. 3d at 345, 568 N.E.2d at 178.

More important, the appellate court also held that even absent the express waiver, it was clear that Halas, Jr., authorized his father to occupy conflicting positions since he appointed him trustee, a position that Halas, Jr., had to realize might come into conflict with his father's duties and desires as shareholder of the Bears. Halas, 209 Ill. App. 3d at 345, 568 N.E.2d at 178.

However, the appellate court agreed with the trial court that Halas, Sr., had breached his fiduciary duty in failing to give notice to the beneficiaries about the reorganization in violation of court order. Halas, 209 Ill. App. 3d at 347, 568 N.E.2d at 180. It also found that the award of one dollar in nominal damages to the petitioner was not against the manifest weight of the evidence. Halas, 209 Ill. App. 3d at 351, 568 N.E.2d at 182.

### 1. Express Waiver of Conflict

The petitioners argue that Halas is inapposite to this case because, unlike in Halas, the decedent here did not expressly waive any conflict of interest. See In re Estate of Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991). We disagree with the petitioners that Halas is inapposite to the instant case. See In re Estate of Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991).

13

The court in Halas held that even absent the express waiver in Halas Jr.'s will, it was clear that Halas, Jr., authorized his father to occupy conflicting positions since he appointed him trustee, a position that Halas, Jr., had to realize might come into conflict with his father's duties and desires as shareholder of the Bears. Halas, 209 Ill. App. 3d at 345, 568 N.E.2d at 178.

Here, the decedent made no express waiver of any conflict of interest in his will. However, like in the Halas case, the decedent authorized his son, the respondent, to occupy conflicting positions by appointing him co-executor of his estate when he was involved in a financial partnership with him. See Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991).

The decedent's decision to appoint the respondent co-executor under such circumstances is sufficient evidence that the decedent approved of the conflict of interest.

2.  Direct Proof of Conflict of Interest

Next, the petitioners argue that in this case, unlike in Halas, there is no direct proof that the terms of the oral partnership gave rise to any conflict. See In re Estate of Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991). They claim that the conflict here was created by the respondent after the decedent's death. Therefore, they contend, no inference can be made that the decedent sanctioned the respondent's conflict.

We are not persuaded. Rogers testified that in 1999, he

14

filed for and received a partnership number and set up a partnership called the Duffy Venture.  After that time, the decedent and the respondent were each responsible for half the taxes on the profits of the Duffy Venture.  Even without any other details of the partnership, this is direct proof that a conflict of interest existed between the respondent's role of co-executor of the decedent's estate and his partnership status in the Duffy Venture.  It was also sufficient evidence that the decedent sanctioned such a conflict of interest.

The petitioners repeatedly argue that the conflict of interest between the respondent and the decedent did not take place until a year after the decedent's death when the respondent, acting as sole executor of the decedent's estate, decided that he was entitled to a one-half share of the capital that the decedent had put into the Duffy Venture.  As support for this contention, the petitioners point to Rogers' first accounting where the capital was reflected as being owned solely by the decedent.

We have reviewed the record and cannot agree with the petitioners' argument.  The evidence in the record reflects that the decedent created a partnership with his son, the respondent. Both parties were responsible for the taxes on half of the profits of the Duffy Venture on their respective income tax forms.

Unfortunately, the decedent never followed through with any written instructions regarding the division of the capital in the Duffy Venture. Contrary to the petitioners' contentions, however, this is not evidence that the decedent did not believe that half of the capital in the Duffy Venture belonged to the respondent.

Although Rogers' first accounting suggested that the decedent owned all the capital in the account, Rogers testified that those calculations were inaccurate based upon later evidence he discovered regarding the decedent's intent. Specifically: (1) the decedent's notation in his prenuptial agreement that he only owned fifty percent of the partnership with the respondent; and (2) the Vanguard account, containing $700,000, was held in joint tenancy with the right of survivorship between the decedent and the respondent before it became a partnership account.[1]

For these reasons, we find that there was a sufficient conflict of interest between the respondent's dual roles as partner and co-executor before the decedent's death. As in

---

[1]In ruling upon whether the decedent sanctioned a conflict of interest between the respondent's dual roles as partner and executor, we must review the evidence presented at trial regarding whether the decedent intended for the respondent to have all the capital in the Duffy Venture. However, the issue of the capital in the Duffy Venture is not on appeal in this case and we make no substantive ruling regarding its ownership. Instead, we are only ruling upon whether the trial court properly granted a directed verdict in the respondent's favor on the petition to remove him as executor of the decedent's estate.

16

Halas, we also find that the decedent sanctioned this conflict. See In re Estate of Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991).

### 3. Respondent as Sole Executor

The petitioners also argue that unlike in Halas, the decedent did not contemplate that the respondent would serve as sole executor. In re Estate of Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991). Therefore, they claim, no inference can be made that the decedent foresaw or sanctioned the respondent's conflict.

We are not persuaded. As we have held, the decedent sanctioned the conflict of interest when he created the partnership with the respondent and appointed respondent as co-executor of his estate. The fact that the decedent chose Joseph and the respondent to serve as co-executors instead of the respondent as sole executor is immaterial for determining the issues in this case.

### 4. Respondent's Conduct as Abuse of Discretion

Finally, the petitioners argue that even if the decedent waived any conflict under Halas, his conduct constitutes such an abuse of discretion that he should be removed as executor. See In re Estate of Halas, 209 Ill. App. 3d 333, 568 N.E.2d 170 (1991).

As support for this claim, the petitioners point to the

17

following conduct: (1) the respondent drafted a waiver for all the beneficiaries to sign, acknowledging that he was one-half owner of the Duffy Venture and waiving any claim to what he considered to be his share of the partnership; (2) after the first accounting of the partnership showed that all the capital was owned by the decedent, and after Joseph had resigned as co-executor, the respondent commissioned a second accounting, which concluded that he was the owner of one-half the capital of the partnership; (3) after Joseph had resigned as co-executor, respondent transferred an account with a value of $700,000 in decedent's sole name into the estate and claimed one-half of the money as his own; and (4) respondent filed gift tax returns for the estate showing gifts from decedent to himself under the oral partnership agreement between the years 1999 to 2003.

A careful review of the transcripts of the proceedings below indicates that the respondent's conduct did not constitute an abuse of discretion.

### a. Waiver

The petitioners have raised this issue without any citation to the record. Without a citation to the record, we are unable to review the waiver that the respondent allegedly asked the beneficiaries to sign. Therefore, we will not address this issue on appeal. See 177 Ill. 2d R. 341(e)(7) (argument portion of brief shall contain the contentions of the appellant with

18

citation to authorities and the pages of the record relied upon).

### b.  The Accountings

The fact that Rogers performed more than one accounting is not evidence that the respondent abused his discretion as executor of the decedent's estate.  Rogers testified that the first accounting was incorrect and he later created a new accounting after he received additional evidence about the Duffy Venture.  There is no evidence that the respondent influenced the results of the second accounting in any way.

### c.  Transfer of $700,000

The petitioners next claim that after Joseph filed his petition to resign, the respondent transferred an account with a value of nearly $700,000 in decedent's sole name to the estate and claimed one-half the money as his own.

Like the waiver that the respondent allegedly asked the beneficiaries to sign, the petitioners do not provide any details about this account other than its value.  Without further information and a citation to the record, we cannot review this issue on appeal.  See 177 Ill. 2d R. 341(e)(7).

### d.  Gift Taxes

Finally, the petitioners allege that the respondent abused his discretion as executor of the decedent's estate when he filed gift tax returns for the estate showing gifts from decedent to himself under the oral partnership agreement between the years

19

1999 to 2003.

Again, we find no abuse of discretion. Rogers, a certified public accountant, testified that the evidence in this case suggested that the respondent was owner of one-half the capital in the Duffy Venture. The respondent, as executor of the estate, was within his discretion to file gift tax returns for the estate showing such gifts from the decedent to himself.

### B. Respondent's Adverse Interest

The petitioners next argue that the respondent's claim to one-half of the capital of the partnership and to gifts he allegedly received from the decedent constitute an adverse interest requiring his removal as executor. As support for this contention, the petitioners cite to In re Estate of Phillips, 3 Ill. App. 3d 1085, 280 N.E.2d 43 (1972), and In re Estate of Devoy, 231 Ill. App. 3d 883, 596 N.E.2d 1339 (1992).

We have reviewed the cases cited by the petitioners and find that they are not applicable to the instant case.

In In re Estate of Phillips, an administrator failed to collect debts that were due the estate from a corporation in which he had been a director. Phillips, 3 Ill. App. 3d at 1089, 280 N.E.2d at 45. The administrator admitted that he had failed to attempt to collect debts owed to the estate because he felt that the corporation needed the money more than the estate. Phillips, 3 Ill. App. 3d at 1089, 280 N.E.2d at 45. The

20

appellate court affirmed the trial court's order holding that the administrator's failure to collect debts was an adequate ground for his removal. Phillips, 3 Ill. App. 3d 1090, 280 N.E.2d at 46.

In In re Estate of Devoy, the appellate court held that the administrator had breached his fiduciary duty to the decedent by participating in lies regarding the destruction of a will. Devoy, 231 Ill. App. 3d at 887, 596 N.E.2d at 1343-44.

The cases cited by the petitioner involve instances of serious wrongdoing. Here, the trial court found no wrongdoing on behalf of the respondent. Instead, the trial court directed a verdict on behalf of the respondent after it found: (1) the decedent created a conflict of interest when he created the partnership with the respondent; and (2) there was no showing of bad faith on the respondent's part. We have thoroughly reviewed the record and find that the trial court's order was not against the manifest weight of the evidence.

### C. Statement of Joseph Duffy

Finally, the petitioners argue that the trial court erred in failing to admit into evidence the settlement proposal drafted by Joseph Duffy, the decedent's brother. In the settlement proposal, Joseph suggested that the respondent should step down as executor because he had a conflict of interest. The trial court barred the evidence on the grounds that it was an expert

21

opinion.

The admission of evidence is within the sound discretion of the trial court and its ruling should not be reversed absent a clear showing that it abused its discretion. <u>People v. Thomas</u>, 171 Ill. 2d 207, 664 N.E.2d 76 (1996). The petitioners argue that the trial court should have allowed Joseph's statement into evidence because it was not offered as an expert opinion. Instead, they claim that the statement was offered as an admission by the co-executor acknowledging an adverse interest of the respondent.

A review of the record indicates that the petitioners were in fact trying to get the statement of Joseph Duffy, a retired attorney, into evidence as an expert opinion without previously disclosing that he would be giving expert testimony. Accordingly, the trial court did not abuse its discretion in prohibiting the petitioners from allowing Joseph's statement into evidence.

### D. CONCLUSION

In sum, we find that the trial court's order directing a verdict in favor of the respondent was not against the manifest weight of the evidence. Before his death, the decedent created a conflict of interest when he appointed the respondent co-executor of his estate when he was also involved in a financial partnership with the respondent. The decedent sanctioned the

22

conflict of interest.  We also find no evidence of wrongdoing on the respondent's part.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

O'BRIEN and BARRY, J.J., concur.